**Charles MERIWETHER, Joseph Harris, and Victor Jackson, Plaintiffs,**

v.

**Wilbur K. SHERWOOD, Individually and as Sheriff of Orange County, New York, Charles Conklin, Individually, and formerly as Under Sheriff of Orange County, New York, Kenneth Davis, Individually and as Captain in the Orange County Sheriff's Department, William P. Powers, Individually, and as Under Sheriff of the Orange County Sheriff's Department, Robert Vosburgh, Individually and as Physician to the Orange County Jail, Eduard Liebel, as Nurse to the Orange County Jail, and the County of Orange, New York, Defendants.**

No. 78 Civ. 6128.

United States District Court, S. D. New York.

May 14, 1981.

---

Mid-Hudson Legal Services, Inc., Kingston, N. Y. by Sandra M. Nathan, Kingston, N. Y., of counsel, Stolar Alterman & Gulielmetti by Daniel L. Alterman, New York City, for plaintiffs.

County of Orange Dept. of Law by James G. Sweeney, County Atty., Robert T. Hartmann, Asst. County Atty., Goshen, N. Y., Costello & Shea by Frederick N. Gaffney, Steven E. Garry, New York City, for County defendants.

Greenblatt, Forrester & Axelrod by Richard Greenblatt, Newburgh, N. Y., for defendant Vosburgh (in his individual capacity).

## OPINION AND ORDER

ABRAHAM D. SOFAER, District Judge:

Plaintiffs brought this suit to recover $340,000 in damages for injuries allegedly suffered while they were pretrial detainees at the Orange County Jail in Goshen, New York. Plaintiffs sued under 42 U.S.C. § 1983, claiming that their constitutional rights had been violated because defendants were deliberately indifferent to their serious medical needs. They also sued for negligence and malpractice under New York state law. Plaintiff Charles Meriwether claimed that he received inadequate treatment of a gunshot wound suffered prior to his imprisonment. Plaintiff Victor Jackson claimed that he received inadequate treatment of his diabetic condition. Plaintiff Joseph Harris claimed that he received inadequate treatment of severe head pains

and of a fractured finger. Named as defendants in the case were Orange County Sheriff Wilbur K. Sherwood, Orange County, Dr. Robert Vosburgh, Nurse Eduard Liebel, and three prison guards. One of the four original plaintiffs, Richard Babcock, discontinued his suit.

The claims asserted in this action were expressly preserved in the settlement of a prior class action, *Meriwether v. Sherwood*, 77 Civ. 3421 (EW) [hereinafter "*Meriwether I*"]. In *Meriwether I*, the plaintiff class and defendants entered into a consent judgment pursuant to which conditions at the Orange County Jail were substantially improved. Defendant in that action made no concession of liability, however, and "in consideration" of the agreement "all parties" waived "attorneys fees, costs and disbursements." Consent Judgment, ¶ IV. The individual actions were filed in December 1978, *Meriwether v. Sherwood*, 78 Civ. 6128 (ADS) [hereinafter "*Meriwether II*"].

*Meriwether II* ultimately went to the jury on three grounds: violation of civil rights under 42 U.S.C. § 1983 by all defendants; negligence under state law by all defendants except Dr. Vosburgh in the delivery of medical care to the plaintiffs; and medical malpractice by Dr. Vosburgh. At the conclusion of their case, plaintiffs consented to the dismissal of all claims against the three prison guards. After eleven days of trial and two days of deliberation, the jury found none of the defendants liable for violating the plaintiffs' civil rights; found Sheriff Sherwood and Orange County liable to plaintiffs Meriwether and Jackson in negligence, awarding them $4,000 and $2,500 respectively; and found none of the other defendants liable to any plaintiff on any theory.

Plaintiffs seek an attorney's fee under 42 U.S.C. § 1988, claiming that Meriwether and Jackson are prevailing parties in the litigation. They seek a total of $140,134.65, based upon hourly fees ranging from $55.00 to $125.00 an hour. In addition, they seek $6,340 for work performed by a paralegal, and $11,579.82 in costs. The attorney's fee

requested is unreasonable in light of both the outcome and the amount of work that was actually necessary in this litigation. But no further analysis of the specific amount requested is necessary, because the plaintiffs are not prevailing parties.

Congress intended to encourage non-frivolous suits under the civil rights laws when, in 1976, it provided for the discretionary award of attorney's fees to prevailing parties in civil rights cases. Pub.L. No. 94–559 § 2, 90 Stat. 2641 (codified at 42 U.S.C. § 1988). *See generally,* Note, *Promoting the Vindication of Civil Rights Through the Attorney's Fees Awards Act,* 80 Colum.L. Rev. 346 (1980). A plaintiff is clearly a prevailing party when he secures a judgment on a claim covered by section 1988. But several courts have deemed certain plaintiffs to have prevailed even when they have not obtained judgment on any claim for which a fee recovery is specifically authorized by the statute. For example, awards of fees have been deemed proper under section 1988: when the suit is settled by entry of a consent decree, *see Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), *aff'g* 594 F.2d 336 (2d Cir. 1979); *Nadeau v. Helgemoe,* 581 F.2d 275 (2d Cir. 1978); *Brown v. Culpepper,* 559 F.2d 274 (5th Cir. 1977); when plaintiff's success on a pendant statutory claim for which fees are not expressly authorized makes it unnecessary for the court to reach the constitutional issues, *see Lund v. Affleck,* 587 F.2d 75 (1st Cir. 1978); *Bond v. Stanton,* 555 F.2d 172 (7th Cir. 1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); when plaintiff has prevailed on a state law claim and the court has reserved decision on the constitutional claim, *see Seals v. Quarterly County Court,* 562 F.2d 390 (6th Cir. 1977); and when plaintiff's claim has become moot or the action is otherwise terminated, where the litigation has somehow caused the defendant to remedy the alleged civil rights violation, *see Ross v. Horn,* 598 F.2d 1312 (3d Cir. 1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *Inmates of Nebraska Penal & Correctional Complex v. Greenholtz,* 567 F.2d 1381 (8th Cir. 1977).

Several considerations support the proposition that a party may prevail under the Attorney's Fees Act without actually securing a judgment on a claim covered by the act. The fact that a plaintiff does not obtain a favorable judgment on a particular claim may have little or no relationship to the strength of the claim asserted. A plaintiff may be amply justified in filing a civil rights claim, and may even establish a reasonable likelihood of success on the merits, but nevertheless fail to secure a favorable judgment for such reasons as judicial restraint, economy, or mootness. Furthermore, such a plaintiff might, in substance although not formally, succeed in vindicating his civil rights claim through the litigation. When these factors coalesce, the policies that led Congress to authorize the award of fees are served by finding the plaintiffs involved to be prevailing parties. The civil rights claims in such cases may be substantial enough to justify encouraging their assertion, and the plaintiffs involved may have vindicated the civil rights claims as fully as if they had obtained favorable judgments.

In *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam), the Supreme Court reviewed the legislative history of section 1988 and confirmed that a plaintiff seeking attorney's fees may sometimes be deemed a " 'prevailing party' without having obtained a favorable 'final judgment following a full trial on the merits,' H.R.Rep. No. 94–1558, 94th Cong., 2d Sess., 7 (1976). See also S.Rep. No. 94–1101, 94th Cong. 2d Sess., 5 (1976)." *Id.* at 756–57, 100 S.Ct. at 1989. The Court specifically cited as an example the entry of a consent judgment vindicating a plaintiff's rights, and it also recognized that "when a party has prevailed on the merits of at least some of his claims" by establishing liability, an award of fees may be appropriate *pendente lite. Id.* at 757, 100 S.Ct. at 1989.

The issue posed in this case differs, however, from the issue in cases in which a plaintiff's civil rights claim has not been adjudicated. Here, plaintiffs' civil rights

claims have been resolved: the jury has found defendants not liable for violating plaintiffs' rights. Arguably, therefore, no adequate factual predicate can be found to exist for the proposition that the plaintiffs have prevailed.

Defendants contend that no plaintiff that loses on his civil rights claim may ever be awarded attorney's fees, because in such cases the defendant, not the plaintiff, is the prevailing party. The recent decision in *Haywood v. Ball,* 634 F.2d 740 (4th Cir. 1980), lends support to defendants' argument, as it appears to hold that a party that loses on a civil rights claim cannot be found to have prevailed for purposes of section 1988.

■ As a general proposition, a rule precluding attorney's fees when the plaintiff has specifically lost on the civil rights claim asserted seems proper. Congress has provided that only *prevailing* parties may secure attorney's fees, and the statutory standard reflects a policy that would encourage suits only to the extent of rewarding plaintiffs who actually prevail or whose civil rights claims, though not decided, are substantial and have been vindicated. In *Hanrahan v. Hampton, supra,* the Supreme Court refused to allow an award to parties who succeeded on appeal in obtaining a trial on the merits of their civil rights claim, stating that, unless the jury on remand decided "some or all of the issues" in their favor, "it could not seriously be contended that the respondents had prevailed." 446 U.S. at 759, 100 S.Ct. at 1990. *Cf. Smith v. University of North Carolina,* 632 F.2d 316 (4th Cir. 1980) (Title VII case).

Despite these considerations, exceptional circumstances may arise in which a court should have the discretion to deem that a plaintiff has prevailed even though the civil rights claim asserted was decided adversely. Though rare, situations do occur in which a party loses on the civil rights claims asserted, but succeeds on another, closely related claim not covered by the Act. In such cases, the party losing the civil rights claim may nevertheless establish ample justification for bringing the civil rights claim, and may obtain from the jury a verdict on other claims that substantially vindicates his constitutional quest.

A case that presents these special circumstances is *Russo v. State of New York,* D.C., 515 F.Supp. 470, 79 Civ. 1650 (ADS), in which a motion for attorney's fees is pending before this Court. The jury in *Russo* found that one defendant was liable to plaintiff for malicious prosecution under New York State law. The victorious plaintiff was awarded $25,000 in compensatory damages and $5,000 in punitive damages. At the same time, however, the jury rejected plaintiff's claim that the defendant's conduct constituted intentional infliction of emotional harm under state law, or a deprivation of civil rights cognizable under 42 U.S.C. § 1983.

The plaintiff in *Russo* undoubtedly was justified in asserting his civil rights claim. He claimed that the defendant had engaged in a pattern of harassment that included the initiation of prosecutions without probable cause, improper searches, and verbal abuse. While plaintiff was unable to prove all of his allegations, and certain claims and defendants were dropped or dismissed prior to or during trial, the evidence satisfied the jury that at least one defendant had in fact prosecuted plaintiff maliciously.

Plaintiff's success on the malicious prosecution claim did much more than establish plaintiff's good faith. Success on that claim strongly suggests—if it does not outright establish—a violation of plaintiff's civil rights. The jury in *Russo* was instructed that it could find for plaintiff on the malicious prosecution claim only if it found that defendant had intentionally and maliciously commenced a prosecution against plaintiff with no reasonable belief that probable cause existed. Under the instructions, the jury could have found for plaintiff on the civil rights claim almost entirely on the basis of its determination as to malicious prosecution under state law. The only obstacle was that the jury was also instructed that, in order to find defendant liable under 42 U.S.C. § 1983, it should consider all of the evidence presented on the underlying state claims "to determine whether the practices of the defendant es-

tablished a pattern of harassment in violation of plaintiff's constitutional rights." The jury, in effect, was told that whether a violation of 42 U.S.C. § 1983 existed was a question of degree, and it was simply asked, without further guidance, to determine whether the defendant's conduct rose to the level of a constitutional violation.

Viewing the verdict in the way most favorable to the defendant, the jury in *Russo* found that the defendant had violated state law by maliciously prosecuting plaintiff, but concluded that the conduct did not reach the level of a constitutional violation. Assuming that the latter inference is compelled in this case, however, its significance is questionable. The jury's finding that the officer acted maliciously, in his official capacity, would appear in principle to establish a constitutional violation. The additional instruction, asking the jury to determine the degree of seriousness in defendant's conduct, was read to the jury because of the present uncertainty in the law governing the specific issue of whether proof of malicious prosecution establishes a violation of 42 U.S.C. § 1983. *See, e. g., Hampton v. Hanrahan*, 600 F.2d 600, 632 (7th Cir. 1979), *rev'd on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Pyles v. Keane*, 418 F.Supp. 269, 276 (S.D.N.Y.1976). *Cf. Dellums v. Powell*, 490 F.Supp. 70, 72 (D.D.C.1980) (Bivens-type action based upon fourteenth amendment). It is possible that this uncertainty will eventually be resolved in a manner that would necessitate a directed verdict in plaintiff's favor on a civil rights claim whenever the jury finds malicious prosecution under state law. But even if this rule of law is not eventually adopted, these state and federal claims are so similar that the federal courts should treat a victory on a malicious prosecution claim as providing an adequate evidentiary basis for the exercise of a District Court's discretion in finding that the plaintiff has prevailed under 42 U.S.C. § 1988.

In the special circumstances of the *Russo* case, moreover, there was strong evidence of defendant's maliciousness. The jury specifically awarded plaintiff punitive damages, pursuant to the usual instructions. That award was necessarily premised on a finding that defendant's conduct was so offensive and of such public concern that a warning against its repetition was warranted. In light of this award, the jury may well have reached its verdict on the civil rights issue because it erroneously assumed from the instructions that it had to find an overall pattern of harassment in order to find a violation of plaintiff's constitutional rights. In any event, even if a finding for plaintiff on a claim of malicious prosecution is in itself an insufficient factual predicate to authorize finding that a plaintiff has prevailed, such an exercise of discretion should be permissible where that finding is accompanied by an award of punitive damages. The jury's verdict on the civil rights complaint appears likely to have been the result of confusion or compromise.

In *Russo*, a finding that plaintiff is the prevailing party is warranted because, in addition to the presence of an adequate factual predicate for such a finding, the litigation vindicated the plaintiff's constitutional quest. The defendant was found liable under state law precisely for the kind of activity that may create liability under section 1983. Plaintiff was awarded significant damages, both compensatory and punitive, and succeeded, to a significant extent, in clearing his name in the community in which he lives and needs to secure employment. To the extent that his claim of harassment was true, moreover, he may have succeeded in deterring such conduct whether aimed at himself or at other members of his community. For these reasons, an award of attorney's fees is proper in *Russo*, and the amount is calculated in a separate order filed with this opinion.

In *Meriwether II*, on the other hand, the special circumstances that may justify a fee award despite an adverse jury verdict on the civil rights claim are absent. There is little doubt that plaintiffs brought the action in good faith, given the history of medical treatment at the prison. But the evidence at trial demonstrated that their constitutional claim was insubstantial, and they completely failed to accomplish any-

thing in their constitutional quest that had not already been achieved by *Meriwether I.*

◼ To have prevailed on their section 1983 claim, plaintiffs would have had to prove that defendants were deliberately indifferent to their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The jury rejected this claim, finding only that Sherwood and the County were negligent in their treatment of the plaintiffs. Unlike *Russo*, in which the jury's verdict on the state law claim included a finding of intentional misconduct—a prerequisite to liability under section 1983—the verdict of negligence in *Meriwether II* required no finding of intentional misconduct. The jury's determination on the constitutional issue was amply supported, if not compelled, by the evidence that the plaintiffs were all afforded extensive medical care.

It is true that the medical facilities at the Orange County Jail were inadequate and that the single, part-time physician was only retained to visit the prison several times a week to take sick call. But these circumstances were typical of those at jails throughout the nation at the time, and they were all voluntarily corrected as a result of the settlement in *Meriwether I.* The services afforded even before these changes included regular sick call, provision of necessary medication, a full-time nurse who all conceded was devoted to his work, outside consultation with experts on specific problems, and emergency care at a nearby hospital. Moreover, although the records kept at the jail were primitive, they showed that the plaintiffs received some form of medical attention several hundred times during the approximately one year each remained at the facility. The evidence also showed that plaintiff Jackson's diabetic condition was extremely difficult to control and that his own conduct may have interfered with treatment; that Meriwether's complaints included such unique and difficult to treat ailments as "fluids coursing through the body"; and that Harris's request to have his minimally deformed little-finger broken and reset was unreasonable.

◼ In short, the plaintiff's constitutional claims were insubstantial and were properly rejected by the jury. The findings of negligence, and the small sums awarded, reflect a determination that the prison authorities should have done more to ensure that proper medical care was provided, not that the defendants were deliberately indifferent. Thus, the proof at trial and the jury's verdict do not provide a factual predicate that could permit a finding that plaintiffs were prevailing parties under 42 U.S.C. § 1988.

◼ Finally, even assuming that an adequate evidentiary basis existed to justify a finding that plaintiffs were prevailing parties, the plaintiffs cannot be said to have vindicated their constitutional quest. Plaintiffs correctly claim that they obtained a substantial victory of their constitutional objectives in *Meriwether I.* Medical services at the prison were markedly improved as a result of the efforts of plaintiffs and Mid-Hudson Legal Services, Inc. An award of attorney's fees would have been appropriate in that proceeding, even though the case was never actually litigated. *Maher v. Gagne, supra; Ross v. Horn*, 598 F.2d 1312 (3d Cir. 1979), *cert. denied*, 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). But plaintiffs in *Meriwether I* expressly waived attorney's fees as part of the overall settlement. Plaintiffs in this litigation cannot claim credit for the results they achieved in *Meriwether I*, having waived the fee for that achievement in consideration of the extensive improvements in medical conditions voluntarily granted.

The principal claim in *Meriwether II* was for damages to remedy injuries inflicted prior to the reforms implemented by *Meriwether I.* That quest was largely unsuccessful. Furthermore, under these circumstances, the minimal victories of plaintiffs on two negligence claims fail to contribute significantly to the vindication of civil rights of other prisoners.

◼ Defendants also seek attorney's fees as prevailing parties. They have failed, however, to establish that *Meriwether II* was unfounded, frivolous, or vexatious in

the sense required by the Supreme Court in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978), and *Hughes v. Rowe*, —— U.S. ——, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). In deciding this contention, it is entirely proper that the Court consider the serious inadequacies corrected by *Meriwether I*, as well as the practical and ethical difficulties faced by counsel for indigent prisoners who seek individual as well as institutional redress. Sufficient evidence existed in the record to allow the case to go to the jury on the civil rights claim against all defendants with the possible exception of Nurse Liebel. The uncontroverted testimony of Liebel as well as of the plaintiffs indicates that Liebel was dedicated to his work and his patients, even though his methods were sometimes unorthodox and he appeared to have been inadequately concerned with administrative details. Nevertheless, Liebel appears to have been sued for valid, tactical purposes, based at least in part on a lack of knowledge as to his full involvement, rather than for any vindictive reason or for purposes of harassment. Even assuming that the suit against Liebel was unjustified, the record reveals that his involvement in the case would have been approximately the same even if he had not been named in the suit. He still would have had to appear as a witness, and his attorneys would have needed to expend approximately the same amount of time as they actually spent in preparing and presenting the defenses of the other defendants that the same attorneys represented.

The cross-motion for attorney's fees is therefore denied. The clerk will enter judgment in behalf of Meriwether and Jackson for $2,500 and $4,000 respectively, with interest and costs as ordinarily taxed in this Court.

So Ordered.