672 F.2d 1014
 Anthony RUSSO and Joann Russo, on behalf of themselves and
their infant children Rose Russo and Antonina
Russo, Plaintiffs-Appellees,
v.
STATE OF NEW YORK, The State of New York Police Department,
Lawrence Cichocki, Delbert George, Orange Motel
Corporation, Tina Horton, Howard
Johnsons Company and Big V
Supermarkets, Inc., Defendants,
Lawrence Cichocki, Defendant-Appellant.
 Nos. 161, 309, Dockets 81-7244, 81-7442.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 5, 1981.
Decided Feb. 9, 1982.
 
 Allen M. Kranz, Garden City, N. Y. (DeMartin, Kranz & Davis, Albertson, N. Y., of counsel), for defendant-appellant.
 Lawrence R. Posner, Newburgh, N. Y., for plaintiffs-appellees.
 Before FEINBERG, Chief Judge, and TIMBERS and MESKILL, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 Lawrence Cichocki, a former New York State Trooper, appeals from a judgment entered after a jury trial in the United States District Court, 515 F.Supp. 470, for the Southern District of New York, Abraham D. Sofaer, Judge, awarding Anthony Russo $25,000 compensatory and $5,000 punitive damages upon a finding that Cichocki was guilty of malicious prosecution against Russo. Cichocki also appeals from a second judgment of the district court awarding Russo $10,000 counsel fees pursuant to 42 U.S.C. § 1988 as a prevailing party in a civil rights action. We reverse, vacate both judgments and remand for a new trial on the malicious prosecution claim.
 
 BACKGROUND
 
 2
 The facts relevant to this appeal constitute one episode in a series of events which gave rise to the suit below. The original complaint filed on behalf of Russo and his family alleged that the State of New York, the State of New York Police Department, the Orange Motel Corporation, the Howard Johnson's Company, Big V Supermarkets, Tina Horton, Detective Delbert George and Officer Lawrence Cichocki had violated the Russos' civil rights, and committed the torts of false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional and mental distress, abuse of process and prima facie tort under New York law.[1] Only the state tort claims of malicious prosecution and intentional infliction of emotional and mental distress, and the federal civil rights claim against appellant Cichocki and against Detective George were submitted to the jury. The sole ground of recovery was the jury finding that Cichocki was guilty of malicious prosecution against Anthony Russo. The issues presented on appeal relate solely to Cichocki's challenges to the judgment against him on the malicious prosecution claim and to the award of counsel fees. We limit our recitation of facts accordingly.
 
 
 3
 On May 6, 1977, Anthony Russo discovered that the 1971 Chevrolet Vega automobile which he and his family had borrowed from his brother-in-law Robert Lostraglio was stolen. Unable to contact Lostraglio, Russo contacted his brother-in-law's insurance company. Identifying himself as Lostraglio, Russo informed the company of the theft and was told that he would have to report the car stolen to the police before the insurance company would accept a claim for processing. Still posing as Lostraglio, Russo reported the theft to the Orange County Sheriffs Department which, in turn, contacted the Walkill Police Department. Officer Kopp of the Walkill Police was assigned to investigate the case. After speaking with appellee over the telephone, Kopp traveled to Russo's residence where Russo, posing as Lostraglio, related the circumstances surrounding his discovery of the theft and gave the officer Lostraglio's registration for the vehicle.
 
 
 4
 That evening, New York State Trooper Lawrence Cichocki received word that a 1971 Chevrolet Vega registered to a Robert Lostraglio had been recovered in Ellenville, New York. Trooper Cichocki then went to Robert Lostraglio's residence, where Lostraglio informed him that he had no knowledge of the car theft since the vehicle was being used by Anthony Russo. Lostraglio concluded that it must have been Russo who had reported the car stolen. At Cichocki's request, Lostraglio accompanied him to the police barracks and gave a deposition which reiterated that he had neither reported the car stolen nor given anyone permission to do so.
 
 
 5
 Upon completion of Lostraglio's deposition, Cichocki contacted Officer Kopp, who repeated his earlier conversation with an individual who had identified himself as Robert Lostraglio. Kopp also informed Trooper Cichocki of the location of the residence where he had met "Robert Lostraglio" and described "Lostraglio's" physical characteristics. Based upon his prior contact with Anthony Russo and his knowledge of Russo's address, Cichocki suspected that Russo was impersonating Robert Lostraglio. In order to confirm his suspicion, Cichocki contacted Lostraglio's insurance company and was told that a Mr. Lostraglio has apprised it of the theft, and that it had instructed him to contact the police.
 
 
 6
 Cichocki concluded that Russo had impersonated his brother-in-law in order to defraud the insurance company. He believed that because the insurance policy was in the name of Lostraglio and did not name Russo as an operator, the insurance company would contend that Lostraglio had breached the policy by allowing Russo and his family to operate the Vega and, therefore, Russo had posed as Lostraglio to prevent the company from discovering the policy breach.
 
 
 7
 Armed with the depositions of Lostraglio and Officer Kopp, Cichocki delivered an information complaint to Judge Sawyer of the Walkill Town Court which charged Russo with criminal impersonation, N.Y. Penal Law § 190.25(1) (McKinney 1975).[2] Judge Sawyer issued an arrest warrant on May 7, 1977, and on May 17, 1977, Russo was arrested. On August 23, 1978, the charge was dismissed.
 
 
 8
 On March 29, 1979, Russo filed a complaint on behalf of himself and his family. On April 15, 1981, the jury returned a verdict in favor of Russo on his claim of malicious prosecution against Cichocki and the court awarded compensatory and punitive damages and counsel fees. Cichocki appeals from these awards.
 
 DISCUSSION
 
 9
 We find no merit in Cichocki's challenges concerning the admission of evidence, the trial court's demeanor and conduct of the trial, the jury charge and the jury award. Therefore, we dismiss these claims without discussion. In addition, we disagree with his arguments regarding the probable cause element of malicious prosecution. However, because we agree that Russo presented insufficient evidence to prove that the underlying criminal proceeding was terminated in his favor, and that the district court was without discretion to award counsel fees to Russo under 42 U.S.C. § 1988, we vacate the judgment and remand the case for a new trial on the malicious prosecution charge.
 
 I. Malicious Prosecution
 
 10
 To recover on a claim of malicious prosecution under New York law, a plaintiff must establish four elements:
 
 
 11
 that (1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted in actual malice.
 
 
 12
 Martin v. City of Albany, 42 N.Y.2d 13, 16, 364 N.E.2d 1304, 1307, 396 N.Y.S.2d 612, 614 (1977); Broughton v. New York, 37 N.Y.2d 451, 457, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87, 94, cert. denied sub nom. Schanbarger v. Kellogg, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975). On appeal, Cichocki raises challenges concerning the elements of probable cause and favorable termination.
 
 A. Probable Cause
 
 13
 Appellant asserts that the issuance of an arrest warrant by Judge Sawyer raises a presumption that Cichocki acted with probable cause, and that the failure of the trial court to instruct the jury as to this presumption and of Russo to present rebuttal evidence are fundamental errors requiring reversal. Appellant failed to object to the jury charge at trial and normally would be precluded from challenging it on appeal. Fed.R.Civ.P. 51; Spano v. N.V. Koninklijke Rotterdamsche Lloyd, 472 F.2d 33, 34 (2d Cir. 1973). Had appellant made a timely objection to the jury charge, his argument on this point would still fail. It is true that under New York law, where a warrant has been issued following an indictment by a grand jury, a presumption arises that the defendant acted with probable cause. Broughton v. New York, 37 N.Y.2d at 456, 335 N.E.2d at 313, 373 N.Y.S.2d at 92. That rule is inapplicable, however, where as here the warrant is issued by a judge on the basis of the sworn accusations of the defendant in the malicious prosecution action. Pandolfo v. Brodell, 3 A.D.2d 853, 161 N.Y.S.2d 494 (2d Dep't 1957); see Colegrove v. City of Corning, 54 A.D.2d 1093, 388 N.Y.S.2d 964 (4th Dep't 1976); Watson v. City of New York, 57 Misc.2d 542, 293 N.Y.S.2d 348 (Civ.Ct.1968). The fact that Cichocki is a police officer who presented depositions in addition to his information complaint does not give him the benefit of the presumption that there was probable cause for the prosecution. Therefore, the district court did not err in failing to give the instruction now proposed by appellant.
 
 
 14
 Cichocki next argues that the evidence established as a matter of law that it was reasonable for him to conclude that Russo was attempting to defraud the insurance company by impersonating Lostraglio and that this reasonable belief is all that is necessary to show that he acted with probable cause. See Munoz v. City of New York, 18 N.Y.2d 6, 218 N.E.2d 527, 271 N.Y.S.2d 645 (1966). Cichocki testified that at the time that he filed the complaint, he knew that Russo had reported the car stolen and had contacted the insurance company using the name of his brother-in-law.
 
 
 15
 We do not believe that the only reasonable inference that can be drawn from these facts is that Russo used the name of his brother-in-law to defraud the insurance company. Therefore, the issue was properly submitted to the jury. Brown v. Simab Corp., 20 A.D.2d 121, 244 N.Y.S.2d 907 (1st Dep't 1963); Watson v. City of New York, 57 Misc.2d at 547, 293 N.Y.S.2d at 355.
 
 B. Favorable Termination
 
 16
 The most difficult issue on this appeal is whether Russo proved that the criminal impersonation proceeding was "terminated in his favor." The New York rule on favorable termination has long been clear:
 
 
 17
 (W)here a criminal proceeding has been terminated in favor of the accused by judicial action of the proper court or official in any way involving the merits or propriety of the proceeding or by a dismissal or discontinuance based on some act chargeable to the complainant as his consent or his withdrawal or abandonment of his prosecution, a foundation in this respect has been laid for an action of malicious prosecution.... (However) where the proceeding has been terminated without regard to its merits or propriety by agreement or settlement of the parties or solely by the procurement of the accused as a matter of favor or as the result of some act, trick or device preventing action or consideration by the court, there is no such termination as may be availed of for the purpose of such an action.
 
 
 18
 Halberstadt v. New York Life Insurance Co. 194 N.Y. 1, 10-11, 86 N.E. 801, 803-04 (1909). Thus where a determination has been made in favor of the accused on the merits there has been a favorable termination. Where a termination is not based on the merits, the dispositive inquiry is whether the failure to proceed "impl(ies) a lack of reasonable grounds for the prosecution." Loeb v. Teitelbaum, 77 A.D.2d 92, 101, 432 N.Y.S.2d 487, 494 (2d Dep't 1980); Halberstadt v. New York Life Insurance Co., 194 N.Y. at 10-11, 86 N.E. at 804.
 
 
 19
 In the present case, it is undisputed that the criminal impersonation charge was dismissed. On appeal, Cichocki asserts that Russo failed to carry his burden of proving that the reason for the dismissal was one which is "favorable" to him. Russo maintains that he carried his burden, and that in the alternative, he was not required to do so because Cichocki stipulated that there was no dispute as to this element of proof.
 
 
 20
 Setting aside the issue of a stipulation for the moment, there is scant evidence in the record to indicate why the criminal impersonation charge was dismissed. Russo testified that he had appeared before Judge Owen of the Criminal Court of Walkill five or six times on this charge, and that the charge had ultimately been dropped. Russo also testified that the fingerprint card and questionnaire used during his processing on this charge had been returned to him. Tr. at 44-46. On cross-examination, however, Russo admitted that he never heard Judge Owen make a "statement that would reflect his reasons for the dismissal." Tr. at 155. According to Russo, the court informed his attorney, Eugene Grillo, of the dismissal. When called to the stand, however, Grillo was unable to shed any light on the subject. He stated that his recollection of the case was "vague," and that the charge had either been "dismissed" or "adjourned contemplating dismissal" and "ultimately dismissed." Tr. at 472-73.
 
 
 21
 Cichocki testified that after filing the information he had not followed the case, and hence did not know what had become of it. Tr. at 620-21. On cross-examination, he hypothesized that the charge may have been dismissed because the main witness, Lostraglio, had left the state. Tr. at 73031. On appeal, Cichocki concedes that this hypothesis is mere speculation. Reply Br. for Appellant at 4 n.1.
 
 
 22
 The only other evidence on the issue of favorable termination was provided by Mrs. Nutt, the Clerk of the Criminal Court of Walkill. Nutt testified that Russo's attorney was granted several requests for postponements of the trial. Following these delays, Russo changed lawyers. His second lawyer filed several motions. The trial was then delayed by the Assistant District Attorney who failed to file an answer to Russo's motions. After the answer was finally filed, the case was postponed several times because of the illnesses of the judge and of Russo's attorney. Nutt testified that the case was eventually dismissed on August 23, 1978. Tr. at 452-55.
 
 
 23
 The record discloses no reason for the dismissal of the criminal impersonation charge against Russo. It establishes only that the case was delayed several times and eventually dismissed. This is insufficient proof as a matter of law that the proceedings were terminated in favor of Russo. In order to meet his burden of proof on this element, a plaintiff must present evidence of the circumstances under which the criminal proceeding was terminated. If the defendant does not present conflicting evidence, the court may decide the issue as a matter of law. However, if the evidence conflicts, the issue is one of fact to be decided by the jury. Once the jury has made its finding, the court must determine whether under those circumstances, the termination was sufficiently favorable to the accused to constitute a favorable termination. Restatement (Second) of Torts §§ 672 & 673 (1977); Lenehan v. Familo, 79 A.D.2d 73, 436 N.Y.S.2d 473 (4th Dep't 1981); Loeb v. Teitelbaum, 77 A.D.2d at 98, 432 N.Y.S.2d at 491-92; Whitmore v. City of New York, 80 A.D.2d 638, 436 N.Y.S.2d 323 (2d Dep't 1981). In the absence of a concession by Cichocki on this issue, it was incumbent upon Russo to come forward with a more complete explanation as to the circumstances of the dismissal of the criminal impersonation charge.
 
 
 24
 On appeal, Russo asserts that Cichocki had in fact conceded that the termination had been favorable. The District Judge evidently shared this view inasmuch as he neither instructed the jury that in order to recover Russo had to prove by a preponderance of the evidence that the underlying criminal proceeding had been terminated in his favor, nor found for Russo as a matter of law on this issue. However, it is clear from a reading of the record that the alleged stipulation did not go beyond a concession that the underlying criminal impersonation charge had been dismissed. The colloquy between the court and the attorneys, Mr. Posner for Russo, and Mr. Krupin for Cichocki, which is claimed to constitute the stipulation was as follows:
 
 
 25
 THE COURT: Mr. Posner, what did you intend me to do with this criminal procedure law thing? Why do you want me to take judicial notice of it?
 
 
 26
 MR. POSNER: I was uncertain, your Honor, whether the dismissal of the prosecution was an issue.
 
 
 27
 THE COURT: I gather it is not disputed, is it? The prosecutions against Mr. Russo were both dismissed.
 
 
 28
 MR. KRUPIN: Two were dismissed and there's still one pending.
 
 
 29
 MR. POSNER: I was trying to prove circumstantially what I thought I might not be able to prove directly, your Honor.
 
 
 30
 THE COURT: You can argue to the jury that it is agreed they were dismissed, those two. So I won't need to take notice of that.
 
 
 31
 Tr. at 563-64.
 
 
 32
 On its face the stipulation is ambiguous. Yet, when read in context it is evident that the parties intended the term "dismissal" merely to connote termination, not favorable termination. The initial question posed by the court concerned an earlier request by Russo that Judge Sofaer take judicial notice that under "New York Procedure Law" when criminal charges are dismissed the fingerprint card must be returned to the accused. Tr. at 235. While the return of Russo's fingerprint card would tend to establish that the criminal impersonation charge had been dismissed, see New York Crim.Proc.Law § 160.50 (McKinney Supp. 1981), it would not establish a favorable termination, see Cardi v. Supermarket General Corp., 453 F.Supp. 633, 635 (E.D.N.Y.1978). Since Russo's counsel was only requesting that the court take judicial notice of the fact of dismissal, the stipulation cannot be read as going beyond the scope of that request.
 
 
 33
 The remainder of the record lends credence to this interpretation. For example, Russo elicited testimony on the issue of favorable termination after the stipulation had occurred.[3] In addition, defense counsel's summation to the jury emphasized that Russo had not proven why the charges against him had been dismissed.[4] Had appellant conceded the issue, it is unlikely that his counsel would have argued that Russo had failed to meet his burden of proof.
 
 
 34
 Notwithstanding Russo's failure to prove a favorable termination of the criminal impersonation charge, Cichocki would normally be barred from raising a sufficiency of the evidence claim on appeal because he failed to move for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure. Cichocki's motion for a judgment n. o. v. under Rule 50(b) does not cure this defect because the trial court can entertain such a motion only if the party previously moved for a directed verdict. Sojak v. Hudson Waterways Corp., 590 F.2d 53, 54 (2d Cir. 1978); Oliveras v. American Export Isbrandtsen Lines Inc., 431 F.2d 814, 816 (2d Cir. 1970); 5A J. Moore, Federal Practice P 50.08, at 50-85 (2d ed. 1977).
 
 
 35
 However, while Cichocki's failure properly to preserve his insufficiency of the evidence claim dissuades us from entering a judgment dismissing the complaint against him, it does not preclude us from granting relief. In Oliveras we stated that "(t)o rule that an unintended flaw in procedure bars a deserving litigant from any relief is an unwarranted triumph of form over substance...." 431 F.2d at 817. "Where a jury's verdict is wholly without legal support, we will order a new trial in order to prevent a manifest injustice(,)" despite an appellant's failure to move for a directed verdict. Sojak v. Hudson Waterways Corp., 590 F.2d at 54-55. Oliveras v. American Export Isbrandtsen Lines, Inc., 431 F.2d at 817; but see Scientific Holding Co. v. Plessey Inc., 510 F.2d 15, 28 (2d Cir. 1974) (holding that an insufficiency of the evidence claim may not be entertained on appeal and a new trial granted where a party failed to make a motion for judgment n. o. v.). Here, Russo failed to prove one of the four essential elements of a malicious prosecution action. Martin v. City of Albany, 42 N.Y.2d at 16, 364 N.E.2d at 1307, 396 N.Y.S.2d at 614 (1977); Broughton v. New York, 37 N.Y.2d at 457, 335 N.E.2d at 314, 373 N.Y.S.2d at 94; see Loeb v. Teitelbaum, 77 A.D.2d at 98, 432 N.Y.S.2d at 492; Restatement (Second) of Torts § 658. Therefore, we believe that this is a proper case in which to invoke Sojak and Oliveras.
 
 II. Attorney's Fees Under 42 U.S.C. § 1988
 
 36
 Because appellee may prevail on the retrial of his case, we address the issue of whether the district court had discretion to grant attorney's fees to Russo pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1976), as amended by Act of Oct. 21, 1980, Pub.L.No.96-481, Title II, §§ 205(c) & 208, 94 Stat. 2330. Appellant contends and we agree that because Russo did not prevail on his civil rights claim under 42 U.S.C. § 1983, he is not entitled to attorney's fees under the Act. Like the Fourth Circuit we find nothing in the plain language, the legislative history or the judicial interpretations of section 1988 "require(s) or justif(ies)" the award of fees to a party who lost on the constitutional claim after a plenary trial, Haywood v. Ball, 634 F.2d 740, 743 (4th Cir. 1980); Bunting v. City of Columbia, 639 F.2d 1090, 1095 (4th Cir. 1981).[5]
 
 
 37
 In interpreting section 1988, the starting point of our inquiry is the language of the statute. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 197, 96 S.Ct. 1375, 1383, 47 L.Ed.2d 778 (1976); Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Products Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The plain language of section 1988 is unambiguous. It provides that in an action to enforce, inter alia, section 1983 the court,
 
 
 38
 in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 39
 42 U.S.C. § 1988 (emphasis added).
 
 
 40
 Moreover, the legislative history is not inconsistent with this plain wording. See S.Rep.No.94-1011, 94th Cong., 2d Sess. 1 (1976), reprinted in (1976) U.S.Code Cong. & Ad.News 5909. In addressing the reach of the statute, the Senate report explicitly states that section 1988 is "limited to cases arising under our civil rights laws" and that the award of attorney's fees is to be governed by the principle established in Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), that "(a) party seeking to enforce the rights protected by (inter alia, section 1983), if successful, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " S.Rep.No.94-1011, 94th Cong., 2d Sess. 4 (1976), reprinted in (1976) U.S.Code Cong. & Ad.News 5912 (emphasis added).
 
 
 41
 Despite the clear wording of the statute and its legislative history, the District Judge raised the novel theory that in "exceptional circumstances" a court should have discretion to award attorney's fees under section 1988 to a party who does not succeed on his civil rights claim but who prevails on a pendent claim which "substantially vindicates his constitutional quest." Meriwether v. Sherwood, 514 F.Supp. 433, 436 (S.D.N.Y.1981). In Meriwether, Judge Sofaer maintained that the present case is an appropriate one for the exercise of this discretion.[6] He asserted that in light of the close legal nexus between a section 1983 claim and a malicious prosecution claim, a plaintiff who succeeds on the latter, especially where punitive damages are awarded, should be treated as a prevailing party for purposes of section 1988. Id. at 437.
 
 
 42
 The teachings of the Supreme Court in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), foreclose this expansive interpretation of section 1988. The "American Rule" is that the "prevailing" litigant is not ordinarily entitled to collect attorney's fees from the losing party. Id. at 247, 95 S.Ct. at 1616. Accordingly, the Supreme Court held in Alyeska that the issue of the award of attorney's fees is
 
 
 43
 a policy matter that Congress has reserved for itself. Since the approach taken by Congress to this issue has been to carve out specific exceptions to a general rule that federal courts cannot award attorneys' fees beyond the limits of 28 U.S.C. § 1923, those courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation or to pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others, depending upon the courts' assessment of the importance of the public policies involved in particular cases.
 
 
 44
 Id. at 269, 95 S.Ct. at 1627.
 
 
 45
 In light of Alyeska, courts must guard against awarding attorney's fees where Congress has not authorized. In section 1988 Congress has provided that a prevailing party in a section 1983 action can recover attorney's fees, however, it has not provided that a prevailing party in a malicious prosecution action can do so. In the absence of legislative intent and pronouncement, it was not within the province of the trial court to fashion an award of attorney's fees in this case. A court cannot appropriate a function which Congress has reserved for itself.
 
 III. Conclusion
 
 46
 We reserve and vacate both judgments and remand for a new trial on the malicious prosecution claim. Each party shall bear its own costs.
 
 FEINBERG, Chief Judge (concurring):
 
 47
 I concur in the result reached by the majority, but I would like to add a few words on the issue of favorable termination. A careful review of the record reveals that none of the participants in the trial below focused on this requirement in a state law malicious prosecution action. As the majority persuasively demonstrates, the stipulation went only so far as agreeing to the fact of termination, not the circumstances of it, see supra at 1020. Therefore, a remand is not an inappropriate disposition.
 
 
 48
 I am troubled, however, by the majority's willingness to decide that as a matter of law, the proof presented at trial was insufficient. We should not so easily erect barriers to plaintiffs who seek to recover for injuries that result from police misconduct, particularly when the exclusionary rule, the only other major common law principle for controlling the police, is undergoing a slow erosion. There is not much doubt in this case that Officer Cichocki decided to pay unusual attention to the Russo family in a way that is inconsistent with our notions of appropriate police behavior. The evidence presented at trial tended to show that Cichocki had prosecuted Mrs. Russo for writing checks on insufficient funds; he prosecuted one of Russo's daughters for criminal mischief for smoking in the restroom of a supermarket while another girl was setting some toilet paper on fire; although Cichocki was involved with an accident on a road, he stopped what he was doing when he happened to notice Russo sitting in a van at a side street, simply to determine if Russo was driving without a license; he had heated exchanges with Russo's family in their homes, and was heard to promise that he would "dig and dig and dig until he came up with something" on Russo. Of course the jury did not have to believe all this evidence, but they clearly believed enough of it to conclude that Cichocki had prosecuted Russo with malice.
 
 
 49
 I do not think that in order to prevail, Russo must prove what the state judge was thinking when he dismissed the malicious prosecution action. A much less stringent showing is all that is needed under New York law, Loeb v. Teitelbaum, 77 A.D.2d 92, 432 N.Y.S.2d 487, 493 (2d Dep't 1980) ("the voluntary abandonment of the prosecution by the People ... is ... a termination of the prosecution favorable to the accused," citing Reit v. Meyer, 160 A.D. 752, 146 N.Y.S. 75 (1914)). If Russo can show that Cichocki was correct when he hypothesized that the prosecution was abandoned because Lostraglio left town, then the jury could correctly decide that the state dropped the prosecution for total failure of proof. Such a failure should suffice to support a recovery in malicious prosecution. Singleton v. City of New York, 632 F.2d 185 (2d Cir. 1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981), cited by appellant, is not on point. In that case, prosecution was terminated under N.Y.C.P.L. § 170.55 as an adjournment in contemplation of dismissal. As we stated in Singleton, 632 F.2d at 194:
 
 
 50
 Section 170.55 creates a procedure not unlike probation, designed as a "special break, given usually to first offenders." Kenul v. Hollander, 86 Misc.2d 466, 382 N.Y.S.2d 650 (Dist.Ct. Nassau County 1976).... It is a period of observation, during which time the defendant's behavior may be observed to determine whether the prosecutor's acquiescence in the adjournment was justified.
 
 
 51
 In contrast to the conditional dismissal of § 170.55, dismissal here was independent of Russo's future behavior.
 
 
 52
 The New York rule, as typified by the paragraph from Halberstadt v. New York Life Insurance Co., 194 N.Y. 1, 10-11, 86 N.E. 801 (1909), cited by the majority, supra at 7, sets up two categories of cases: those that terminate through some action attributable to the plaintiff in the malicious prosecution action, and those that terminate in some other manner. I would hold that so long as Russo can show that he did not procure the absence of his brother-in-law, the state's decision to abandon the prosecution falls within the latter category. After all, Lostraglio's testimony could have been obtained by deposing him at his new home. The state should not be allowed to protect its errant police officers by the simple expedient of ending legal actions aimed at harassment just before the court officially decrees that, indeed, the action had no merit.
 
 
 
 [1]
 Federal jurisdiction in this case is based on the Russos' civil rights claim under 42 U.S.C. § 1983. Although the jury found against plaintiffs on this claim, the district court properly exercised pendent jurisdiction over the state tort claims. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725-27, 86 S.Ct. 1130, 1138-39, 16 L.Ed.2d 218 (1966); see Hagans v. Lavine, 415 U.S. 528, 545-47, 94 S.Ct. 1372, 1383-84, 39 L.Ed.2d 577 (1973)
 
 
 [2]
 New York Penal Law section 190.25 provided that:
 A person is guilty of criminal impersonation when he:
 
 
 [1]
 Impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another
 
 
 [3]
 The cross-examination of Cichocki by Russo's attorney contained the following:
 Q. Trooper Cichocki, you were the complainant in the criminal impersonation matter, were you not?
 A. That's correct, sir.
 Q. I believe you said that you never prosecuted it. What do you mean by that?
 A. I was never called to trial on it.
 Q. Do you have any idea why?
 A. I believe motions made in the court-this is not my firsthand knowledge, but something happened in the interim between the arrest of Mr. Russo and the dismissal which caused it to be dismissed. I had no part in that.
 Q. But had you been called to court, you would have prosecuted it?
 A. The Assistant District Attorney with my assistance would have prosecuted it, yes, sir.
 Q. Do you have any idea why this action was dismissed?
 A. Just from what I heard in here about Mr. Lostraglio's deposition.
 Q. Did you ever hear that anywhere else?
 A. No, sir. Can I explain something?
 Q. By all means.
 A. When the arrest is made by a trooper, the general arrest report is submitted. This was submitted by the trooper who made the arrest. A subsequent report is required within a period of time afterwards, requiring a disposition on it.
 Because of that, I was not the arresting officer. I never received the disposition.
 Q. Do you happen to know whether anyone appeared in court at any time, any other State Police?
 A. On the criminal impersonation?
 Q. Yes.
 A. I know I didn't.
 Q. The answer is that you don't know whether anyone else appeared or not?
 A. That's correct, yes, sir.
 Tr. at 730-31.
 
 
 [4]
 The claimed stipulation covered an allegation of malicious prosecution against Officer Cichocki and a similar allegation against Detective Delbert George which arose from a separate criminal charge filed against Russo. Attorney Krupin represented both Officer Cichocki and Detective George below. In his summation, Attorney Krupin argued that the plaintiffs failed to prove favorable termination with respect to the claim against Detective George:
 In addition, along the same lines, you know that the case was eventually dismissed, but do we know for what reason it was eventually dismissed?
 No witness came forward on behalf of the plaintiffs to tell you why the case was dismissed. How do we know it had anything to do with the photograph that Detective George had initially provided in his preliminary investigation?
 We don't know. We are assuming it. Plaintiffs are telling you that is why it was dismissed. There has been no evidence brought into this courtroom on the part of plaintiffs to show the reason why the case was dismissed, and I say to you it could have been a number of other reasons that had nothing to do with the photograph.
 But we are here for facts, not speculation, and these facts were not brought out. Tr. at 766.
 Tr. at 766.
 
 
 [5]
 Russo argues that our recent decision in Milwe v. Cavuoto, 653 F.2d 80 (2d Cir. 1981), is applicable to the present case. Despite language in Milwe that a "finding of liability on the pendent state law claim, could be a sufficient ground to justify an award under the Act(,)" id. at 84, that case held only that a plaintiff who recovered nominal damages on her civil rights claim as well as damages on her pendent state law claims was entitled to attorney's fees under section 1988. The important point about Milwe is that the civil rights issue was heard and decided in plaintiff's favor. See Perez v. University of Puerto Rico, 600 F.2d 1, 2 (1st Cir. 1979). In contrast, Russo's civil rights claim was heard and decided against him
 
 
 [6]
 In the process of deciding whether to award attorney's fees in Meriwether, Judge Sofaer decided the issue of the award of attorney's fees in the present case. 514 F.Supp. at 436-37. In accordance with that determination, Judge Sofaer issued a separate order, filed along with the opinion in Meriwether, awarding Russo $10,000 in attorney's fees. Id. at 437; J.App. at 361-64