Staci BONNER, Plaintiff–Appellee,

v.

Robert GUCCIONE, Jr., individually, and as Publisher and Editor of Spin Magazine, Spin Magazine, Camouflage Associates, Camouflage Publishing, Inc., Stephen C. Swid Corporation, and SCS Communications, Inc.; Defendants–Appellants.

No. 1433, Docket 97–9026.

United States Court of Appeals, Second Circuit.

Argued April 13, 1998.

Decided April 30, 1999.

Amended May 27, 1999.

Bettina B. Plevan, New York, N.Y. (John E. Daly, Christine Oyakawa, Proskauer Rose LLP, on the brief), for Defendants–Appellants.

Hillary Richard, New York, N.Y. (Laurie Edelstein, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., on the brief), for Plaintiff–Appellee.

Before: JACOBS and MAGILL,* Circuit Judges, and KORMAN,** District Judge.***

KORMAN, District Judge:

Staci Bonner commenced this action alleging that she and other female employees at *Spin* Magazine were the victims of sexual harassment. A number of causes of action were alleged under federal and state law. Of relevance here are three separate claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and three identical claims under the New York State Human Rights Law, N.Y. Executive Law § 296 (NYSHRL). Under both of the foregoing statutory schemes, Bonner claimed that she was the victim of quid pro quo sexual harassment, intentional gender discrimination and hostile work environment sexual harassment. On five of these six causes of action, the jury either found in favor of the defendants or failed to award any damages. Specifically, as the district court analyzed the record, Bonner did not prevail on her quid pro quo harassment claim because "[t]here was insufficient evidence that she herself was asked to submit to sexual advances in order to gain a promotion," *Bonner v. Guccione*, No. 94 CIV.7735, 1997 WL 441910 at *2 (S.D.N.Y. Aug. 6, 1997) (Cote, *J.*) (hereafter *Bonner II*); she did not prevail on her claim of gender discrimination because she "failed to prove that the defendants were untruthful in their explanation that she was denied writing opportunities and other benefits because of her writing abilities as opposed to her gender," *id.* at *3; and she was not awarded damages on her Title VII hostile work environment sexual harassment claim because she failed to establish that she sustained any damage within the period of her employment that was not time-barred. *Id.* at *5. Bonner was awarded $90,000 on the NYSHRL analog of that claim which has a much longer statute of limitations.

■ The latter two causes of action give rise to the issues on this appeal from judgments entered in the United States District Court for the Southern District of New York (Cote, *J.*), awarding the plaintiff $90,000 on her NYSHRL cause of action and $760,109.92 in attorney's fees and costs as a prevailing party on her Title VII cause of action. The issues relating to these two judgments have their genesis in the difference between the statutes of limitation for Title VII causes of action and NYSHRL causes of action. Under Title

---

* Honorable Frank J. Magill, United States Court of Appeals for the Eighth Circuit, sitting by designation.

** Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

*** This matter has been heard by order of the Chief Judge of this Court under 28 U.S.C. § 46(b) certifying a judicial emergency.

VII, plaintiff here could recover damages for discriminatory conduct that occurred within 300 days before the filing of a complaint with the EEOC. 42 U.S.C. § 2000e–5(e)(1). If the conduct fell outside of the 300–day period, she could recover for that conduct only if she could demonstrate that she was subject to a continuous policy and practice of discrimination, and that one act in furtherance of the policy and practice fell within the 300–day period. *See Acha v. Beame,* 570 F.2d 57, 65 (2d Cir.1978). By contrast, on her NYSHRL cause of action, plaintiff could recover damages for discriminatory acts within three years of the filing of the complaint.

This difference was not reflected in Judge Cote's charge. Instead, the instruction to the jury clearly suggested that the same statutory period of limitations applied to both causes of action. As Judge Cote concluded her instruction on the period of limitations:

> This means that for Ms. Bonner to recover on ... [the claims of hostile work environment sexual harassment, quid pro quo sexual harassment or intentional gender discrimination], she must prove that there was a continuous policy and practice of discrimination at Spin, and that one act in furtherance of this policy or practice occurred after September 11, 1993, and before Ms. Bonner left Spin on November 24, 1993.

Joint Appendix 654 (hereafter cited to the page number, e.g. A654).

The suggestion that this charge applied to both the Title VII and the NYSHRL causes of action was conveyed to the jury both implicitly and explicitly. The charge was the only one that referred to the causes of action for hostile work environment sexual harassment. Indeed, the introductory clause of the statute of limitations charge indicated that it applied "to each of the three claims [Judge Cote had] just described," A653. These included the Title VII and NYSHRL causes of action. A638–44. Moreover, a subsequent

statute of limitations instruction on a different state law cause of action began as follows: "I have already charged you with regard to the statute of limitations for claims under Title VII and NYSHRL law." A665.

The error in the statute of limitations instruction as it related to the NYSHRL causes of action was raised after the charge was read to the jury, but before the jury was told to begin its deliberations, when Judge Cote asked whether there were any objections to the charge. Plaintiff's counsel replied:

> In your charge on the statute of limitations, you mentioned New York law. There is no statute of limitations issue with respect to New York law. It's three years back. I didn't see it, I just heard it. I don't know if you intended that.... It wasn't in the actual Title VII charge, so I don't know that it needs to be corrected. I just wanted to bring it to your attention.

A494. Judge Cote then asked whether plaintiff's counsel wanted her to do anything to rectify the charge. She replied "No." *Id.*

The next day Judge Cote presented the parties with draft supplemental instructions intended to clarify the appropriate statute of limitations for both Title VII and the NYSHRL. Defendants stated that they wanted the charge given to the jury while it was deliberating, but plaintiff argued that she would be prejudiced if the charge were given at that point because "it emphasizes something that the jury hasn't indicated they are in a quandary over." A507. Rather, plaintiff preferred that any problems with the charge be rectified by a post-verdict interrogatory. A508. Judge Cote ultimately deferred to her request and declined to give the instruction. A515. Nevertheless, Judge Cote observed that, because the initial charge "would be read by the jury to suggest that the 300–day statute of limitations period applies to both the federal and the New York State

claims[,] ... counsel should be alert to whether or not additional clarifying questions need to be put to the jury immediately based upon the verdict they return." A515.

The jury found that plaintiff had established by a preponderance of the evidence that Camouflage Associates, the publisher of *Spin* Magazine, was liable for hostile work environment sexual harassment under Title VII and the NYSHRL, and that Robert Guccione, Jr. was liable for the same under the NYSHRL as a person with power over personnel decisions. The jury, however, found that plaintiff had failed to prove that she was entitled to compensatory or punitive damages against either defendant. On all other causes of action under Title VII and New York law, the jury found for the defendants on the issue of liability.

After a discussion with counsel, and over a defense objection, the district judge submitted a special interrogatory entitled "Second Special Verdict Form" to the jury. The substance of this form inquired whether the jury reached its verdict for the defendants with respect to quid pro quo sexual harassment and intentional gender discrimination solely because plaintiff failed to prove "that defendants maintained a continuous policy or practice of discrimination, or that one act in furtherance of this policy or practice occurred after September 11, 1993." A545. When the district judge summarized the special interrogatory to the jury, many of the jurors nodded yes, and several others indicated orally that the statute of limitations had affected their verdict. *Id.* The jury deliberated briefly, and then returned a "yes" answer to both questions, A718, thereby indicating that the verdicts on the quid pro quo sexual harassment and intentional gender discrimination claims were based solely on the jury's application of the statute of limitations as it had been charged.

The Second Special Verdict form did not ask the jury whether its verdict in favor of the plaintiff on the hostile work environment cause of action, without any award of damages, was affected by the erroneous statute of limitations instruction. Judge Cote had agreed initially with the defendants that the issue of compensatory damages should not be reconsidered. A547. Upon reflection, however, she concluded that her initial statute of limitations instruction may have affected this verdict as well. As she explained:

> [B]ecause while they found a violation of the hostile work environment cause of action under the New York human rights claim, obviously their understanding of the statute of limitations restricted, in their mind, an assessment to a final few months. And that may have affected similarly their decision on the amount of damages.

A560.

Judge Cote then gave the jury a supplemental instruction on the correct statute of limitations under the NYSHRL. Later that day, the jury returned a verdict that was identical to the previous verdict on liability on all of the affected causes of action under the NYSHRL. On plaintiff's NYSHRL hostile work environment cause of action, however, it awarded plaintiff $90,000 in compensatory damages.

Plaintiff then moved for attorney's fees. She argued that the finding of liability under Title VII rendered her a "prevailing party" on that cause of action even though the jury obviously found that the defendants had succeeded in establishing that the Title VII claim was time-barred. The district judge agreed and awarded plaintiff $760,109.92 in attorney's fees and costs. A very substantial portion of the award included attorney's fees for time expended in obtaining the $90,000 NYSHRL judgment. The latter judgment and a supplemental judgment awarding attorney's fees are both challenged here.

The defendants argue that: (1) the district judge's use of post-verdict interrogatories and her submission of a supplemen-

tal charge on the statute of limitations were improper, and (2) plaintiff was not entitled to attorney's fees under Title VII because that claim was time-barred. We agree with the defendants that the district court judge should not have waited until the jury returned its verdict before correcting the charge on the statute of limitations. Nevertheless, because we are persuaded that the defendants were not prejudiced by the procedure she chose to follow, we affirm the judgment entered on the jury verdict. We also agree with the defendants that plaintiff was not a prevailing party on her Title VII hostile work environment claim and we vacate the award of attorney's fees to the extent that they were for efforts expended on plaintiff's NYSHRL cause of action. We remand the case to the district court for a calculation of attorney's fees based solely on plaintiff's success on the Equal Pay Act cause of action on which she was awarded $10,000 by the jury. The defendants do not appeal from the part of the judgment that reflects the latter award.

## I. THE POST–VERDICT SUPPLEMENTAL JURY INSTRUCTION

Defendants argue here, as they did in a post-verdict motion, that "judgment should have been entered on the jury's original verdict awarding no compensatory damages." Brief for Defendants–Appellants at 11 (hereafter Def. Br.) (emphasis omitted). Specifically, defendants argue that Judge Cote erred in allowing the jury to deliberate a second time on plaintiff's claim for compensatory damages "because (i) plaintiff waived the statute of limitations issue; (ii) there was no basis for asking the jury to reconsider its rejection of plaintiff's compensatory damage claim; and (iii) the procedure was coercive." *Id.* None of these objections entitle defendants to the entry of a judgment on the jury's original verdict.

 Judge Cote rejected the claim that plaintiff waived her right to a corrected instruction. Instead, she found that

plaintiff "merely asked that it be given in a different form, as a post-verdict interrogatory, and not a charge during deliberations." *Bonner v. Guccione,* No. 94 CIV. 7735, 1997 WL 362311 at *8 (S.D.N.Y. July 1, 1997) (Cote, *J.*) (hereafter *Bonner I* ). This finding is sufficient to dispose of defendants' claim of waiver. Moreover, even if plaintiff waived any objection to the charge, the waiver was merely of her right to obtain relief based on the error; a district court judge is not required to allow an error to go uncorrected merely because the party affected by it has made a strategic choice to forego her right to have it corrected. While the defendants question whether it was appropriate for Judge Cote to wait until after the jury returned a verdict, this argument is analytically separate from the considerations underlying the waiver rule.

Nor is the waiver argument aided by the procedural forfeiture cases on which the defendants rely. Federal Rule of Civil Procedure 51, the formal procedural forfeiture rule that is most directly on point, provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict." This rule is intended "to prevent unnecessary new trials because of errors the judge might have corrected if they had been brought to his attention at the proper time." *Cohen v. Franchard Corp.,* 478 F.2d 115, 122 (2d Cir.1973); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure,* § 2551 at 384 (2d ed. 1994) ("The necessity of a retrial is avoided when, by design or through sheer neglect, the losing party fails to object to an instruction by the court or its failure to give one at the proper time"). This concern is not implicated where, as here, the trial judge corrected the error in her instruction before the jury was discharged. Moreover, plaintiff here called the error in the charge to the attention of Judge Cote before the jury retired to commence its deliberations.

*Bonner I* at *3. Under these circumstances, she was not required to apply a strict procedural forfeiture rule. None of the cases on which defendants rely suggest otherwise.

In *Lavoie v. Pacific Press & Shear Co.*, 975 F.2d 48, 55 (2d Cir.1992), the principal case on which defendants rely, the defendant failed to timely object to an instruction that resulted in an allegedly inconsistent verdict. The claim that the verdict was inconsistent "was raised for the first time on ... appeal." *Id.* at 54. We held that failure of the defendant to timely object precluded a challenge to the charge and to a "jury's verdict [which] comports with the trial court's instructions." *Id.* at 55. While we acknowledged that failure of a timely objection would *not* deprive us of the discretion to "review the judgment and order a new trial due to inconsistent special verdicts," we declined to do so in that case. *Id.* at 55–56.

*Lavoie* obviously implicated the policy of avoiding unnecessary retrials. *Lavoie* cited with favor an earlier case that held that the " 'failure to bring alleged inconsistencies in the verdict sheet to the court's attention *before* the jury has been discharged waives the right to have the alleged inconsistencies remedied *in a new trial.*' " *Id.* at 55 (quoting *United States Football League v. National Football League*, 842 F.2d 1335, 1367 (2d Cir.1988) (emphases added)). Unlike *Lavoie* and similar cases, this case does not involve a failure to object that can be excused only at the cost of a retrial. Indeed, for this very reason, the district court judge may have had broader discretion to correct the error than we would have had to review it if the issue had been raised for the first time on direct appeal. *Cf. City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 256 n. 12, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (suggesting that, because of "the unusual nature of the instant situation," where the only issue was the availability of punitive damages and where the jury's award of such damages was "susceptible of rectifica-

tion without further jury proceedings," the district court properly considered the issue notwithstanding the failure of the defendant to object to a charge allowing the jury to award punitive damages).

█ The defendants' next argument is that "there was no basis for asking the jury to reconsider its rejection of plaintiff's compensatory damages claim." Def. Br. at 11. It is true that the initial verdict, which found defendants liable for creating a hostile work environment under the NYSHRL, was not necessarily inconsistent with the jury's failure to award damages. The charge, as initially given, allowed for an award of damages for a hostile work environment between September 11, 1993 and before November 24, 1993, a period during which "[m]ost of the people about whom plaintiff made allegations that the jury could have interpreted as contributing to a hostile environment had left SPIN [Magazine]." Def. Br. at 26 n. 4. Under these circumstances, the jury's original verdict was consistent with the charge and the evidence. The problem is that the charge on the NYSHRL statute of limitations was wrong.

If the jury had been instructed properly that it could consider conduct occurring over a period of three years, instead of seventy-three days, it would have been difficult to reconcile its finding in favor of plaintiff on liability without an award of any compensatory damages. *See Vichare v. AMBAC Inc.*, 106 F.3d 457, 464 (2d Cir.1996) ("[A] verdict of insufficient damages—i.e., where a jury finds liability and damages, yet sets damages in an amount inconsistent with any theory of liability offered at trial—is an example of a verdict that is inconsistent with the facts adduced at trial."). Indeed, in explaining her decision to resubmit the issue of compensatory damages on the NYSHRL hostile environment cause of action, Judge Cote observed that, while the jury found that defendants were liable to plaintiff on that cause of action, "obviously their understanding of the statute of limitations restricted, in

their mind, an assessment [of damages] to a final few months. And that may have affected similarly their decision on the amount of damages." A560. This assessment by an able trial judge, who was intimately familiar with the record, justified her decision to resubmit the issue of compensatory damages to the jury before it was discharged. *See Richard v. Firestone Tire & Rubber Co.,* 853 F.2d 1258, 1260 (5th Cir.1988) ("The district judge, who has observed the jury during trial, prepared the questions and explained them to the jury, is in the best position to determine whether the answers reflect confusion or uncertainty," and "whether the jury will likely be able to resolve this uncertainty with proper guidance.").

■■ We likewise reject the argument that the resubmission of the issues with a correct instruction violated the defendants' Seventh Amendment right to a jury trial. We agree that, " '[g]iven correct instruction on the law and no clear disregard for that instruction on the face of the verdict, a jury verdict must remain immune from questioning by the district court.' " *T.H.S. Northstar Assocs. v. W.R. Grace and Co.,* 66 F.3d 173, 178 (8th Cir.1995) (quoting *Gander v. FMC Corp.,* 892 F.2d 1373, 1379 (8th Cir.1990)). This principle, which the defendants invoke, Def. Br. at 14, does not apply where a jury had been given *incorrect* instruction on the law. Otherwise such a verdict would be immune from appellate review. Indeed, even in criminal cases, it is the Double Jeopardy Clause, rather than the Jury Trial Clause of the Sixth Amendment, that insulates a verdict for the defendant from appellate review based on trial error. *See United States v. Wilson,* 420 U.S. 332, 352, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). While we need not decide here whether the Double Jeopardy Clause would prevent a trial judge from resubmitting a case to the same jury immediately after it had returned a "not guilty" verdict, we see no constitutional impediment to the resubmission of a civil case for purposes of correcting an erroneous legal instruction.

■ The defendants' final argument is that the post-verdict "procedure was coercive." Def. Br. at 11. This argument cannot be reconciled with the language of the supplemental instruction. The jury was initially asked whether the erroneous charge had affected its verdict. After it replied in the affirmative, Judge Cote explained to the jury that it was being given some additional instructions and questions related to plaintiff's claims under the New York State Human Rights Law. Judge Cote then gave the first of her cautionary instructions as follows:

> By giving you these instructions and questions I am not in any way suggesting what your answers should be. Remember, you are the sole judges of the facts. Your answers should be based on the facts as you find them and the law as contained in the Jury Charge as a whole as previously given to you, except as modified by the Supplemental Charge.

A735.

Judge Cote then went on to explain the circumstances that led to the resubmission of the issue to the jury. Specifically, she told the jurors that the statute of limitations charge at the specified pages of her initial instruction "was a description of the law that applies to Title VII claims. Because the charge did not explain the differences in the statute of limitations law for the Title VII and New York law claims," the jury was being given a Third Special Verdict Form. *Id.*

After explaining the form, and outlining the law with respect to the statute of limitations, and the jury's duty with respect to the claims on which it initially found for the defendants—gender discrimination and quid pro quo sexual harassment—Judge Cote addressed the hostile environment sexual harassment claims as to which the jury found in favor of the plaintiff on the issue of liability. She ex-

plained that this was being done so that the jurors could determine whether the erroneous statute of limitations instruction "affects your award of compensatory damages on that claim." A736–37. The supplemental instruction then concluded with yet more cautionary language. Specifically, the jury was told that it should not alter its original findings "unless you determine that your findings on liability, as governed by the law on the statute of limitations as I have just explained it, affect the damage award. I emphasize again that I am expressing no view on whether or not you should make an award of either Back Pay or Compensatory Damages." A737.

The foregoing instruction plainly refutes defendants' complaint that the procedure employed by Judge Cote was coercive. Nor is there any merit to defendants' contention that "the jury was re-instructed on the state statute of limitations in a manner that improperly emphasized the decision not to award any compensatory damages." Def. Br. at 18. The defendants do not cite any language in the charge that has this effect. Indeed, the charge is a model of clarity and fairness. The only objectionable language is in a later response to a note from the jury on a question added to the Verdict Sheet to clarify the jury's intent with respect to its original award of back pay on the Equal Pay Act cause of action. In the course of responding to the questions, defendants allege that "[t]he court repeatedly reminded the jurors that they were not permitted to award damages for back pay under Title VII, focusing the jury's attention on the fact that they had not awarded any damages on the hostile environment claim." *Id.* (citing A603–06).

Our review of the record cited by defendants simply does not support the claim that Judge Cote's response to the jury note "focus[ed] the jury's attention on the fact that they had not awarded any damages on the hostile environment claim." *Id.* Nor was any objection taken by the defendants on this ground. On the con-

trary, it was the *plaintiff* who objected to this charge, A601, complaining bitterly that "we have been tremendously prejudiced" because the jury was "told four times that they can't give back pay for sexual harassment hostile work environment," but was not told "that they are entitled to give her compensatory damages for that." A606. Judge Cote, accepting the advice of defendants' counsel, declined to reinstruct the jury that it was entitled to award compensatory damages. A607.

Defendants' claim that the verdict was coerced is undermined even further by the verdict itself. The jury did not change a single one of its findings on the issue of liability on the three causes of action that were resubmitted, and it declined to make any additional award of back pay. More significantly, defendants impliedly concede that the evidence at trial provided a rational, if not a compelling, basis for the jury to draw the distinction it ultimately did between the Title VII hostile work environment cause of action (on which it did not award any damages) and the comparable NYSHRL cause of action on which it awarded $90,000 in compensatory damages. Def. Br. at 26 & n. 4.

■ Unable to establish any actual coercion, defendants are reduced to arguing for a *per se* rule that would treat "post-verdict submissions such as the one made here . . . [as] inherently coercive and improper." Def. Br. at 18. The two cases upon which they rely, however, do not bear any resemblance to the present case. *McCollum v. Stahl,* 579 F.2d 869 (4th Cir. 1978), is the first of the two. After the jury there returned a special verdict form which answered "no" on the question of liability (wrongful discharge), but then proceeded to award damages, the district judge resubmitted the case to the jury. The Fourth Circuit held that resubmission was improper because the jury had already made "an unequivocal finding of no [liability]" and the rest of the verdict was therefore "meaningless . . . surplusage." *Id.* at 871. In *McCollum,* however, there

was no dispute that the judge's instructions had been legally sound; rather, the decision turned on the fact that once the jury found in favor of the defendant on the issue of liability, any damage award was improper. Unlike *McCollum*, the jury here found that the defendants *were* liable to the plaintiff for creating a hostile work environment, and there was good reason to believe that the failure to award damages was due to an erroneous instruction. Moreover, the procedure followed in *McCollum*—unlike that employed here— created a substantial risk of coercion. Indeed, in *Manufacturers Hanover v. Drysdale Sec. Corp.*, where we affirmed the district judge's post-verdict interrogatories regarding the legal basis of the verdict, we distinguished *McCollum* as a case which was "'tantamount, in its effect, to a direction to the jury.'" 801 F.2d 13, 26 (2d Cir.1986) (quoting *McCollum*, 579 F.2d at 871). The procedure followed here does not fit that description.

*Perricone v. Kansas City S. Ry.*, 704 F.2d 1376 (5th Cir.1983), the second case on which the defendants rely, is equally distinguishable. *Perricone* was a negligence case in which the jury returned a verdict for plaintiff in the amount of $105,-000, but also found that his injuries were 70 percent attributable to his contributory negligence. The trial judge immediately instructed the jurors that he had failed to advise them, as he should have, that a finding in excess of 50 percent contributory negligence precluded any recovery by the plaintiff. The judge then told the jury that, "if you would like to reconsider your verdict, in view of this information, then the Court will give you the privilege of doing so." *Id.* at 1378. The jury was directed to return to the jury room to "decide what you wish to do in this regard" without any of the cautionary instructions of the kind given here. *Id.* After fourteen minutes of deliberation, the jury returned the same damage award, but reduced to 50 percent Perricone's contribution to his injury.

Because of the defendant's failure to object, the Court of Appeals for the Fifth Circuit "affirm[ed] ... the resubmission of the case to the jury," *id.* at 1382, although it did hold that there was a "substantial risk" that the jury may have concluded that "it [was] being told that its finding of 70 percent contributory negligence was unsound," *id.* at 1378. We agree with this assessment of the procedure followed in *Perricone*. Nevertheless, we do not agree that a post-verdict resubmission automatically warrants reversal. Indeed, defendants concede that post-verdict instructions are appropriate "where an erroneous instruction is noticed for the first time after the verdict has been returned." Def. Br. at 13 (citing *Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 891 (2d Cir.1988)). If such a resubmission is not coercive in that context, or in other contexts in which it is permitted, *see, e.g.*, *Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1260 (5th Cir.1988); *Litton Sys., Inc. v. American Tel. & Tel. Co.*, 700 F.2d 785, 803 (2d Cir.1983), we fail to see why it should be deemed coercive here.

*United States v. Desimone*, 119 F.3d 217 (2d Cir.1997), *cert. denied sub nom. Fernandez v. United States*, —— U.S. ——, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998), a criminal case, is close enough to the present case to warrant mention. Just prior to receiving a note from the jury that it had reached a verdict, the district court judge there realized that he failed to define "reasonable doubt." Instead of taking the verdict, he gave a supplemental charge defining reasonable doubt and sent the jury back to consider its verdict. *Id.* at 226. On appeal, the defendant argued that he was prejudiced by the delay in giving the curative instruction. We held that, because "the trial court's first charge was sufficient and legally correct, appellant was not entitled to any curative measures, timely or otherwise. Prejudice may not be found therefore from the manner in which the trial court took such measures." *Id.* at 227. The supplemental charge here did

not clarify an earlier correct instruction. Instead, it cured an erroneous one. Nevertheless, we are equally confident that "[p]rejudice may not be found ... from the manner in which the trial court took such measures." *Id.*

■ While we conclude that the procedure followed here does not warrant the entry of a judgment based on the initial verdict, we add these additional words with the benefit of hindsight that appellate judges enjoy. Judge Cote should have followed her original instinct to correct the error in her instruction as soon as it was brought to her attention. The jury had barely begun its deliberations when she proposed to do so, and there is no reason to believe that plaintiff would have been prejudiced if a corrected charge had been given at that time. Delaying the correction of an instruction implicates the concern articulated in *Perricone* that, however the resubmission is explained, there remains the risk that the jury will infer that the judge is conveying her unhappiness with the verdict.

Delay also invites other problems. In the present case, for example, the district court judge initially agreed with the defendants that the hostile work environment cause of action was not affected by the erroneous statute of limitations instruction. On this basis, she asked the jury only whether its verdict in favor of the defendants on the quid pro quo sexual harassment and gender discrimination causes of action was affected by the erroneous instruction. After the jury responded that the charge affected the verdict on those causes of action, the district court judge changed her mind about the hostile work environment cause of action and concluded that it should be resubmitted as well.

This led to a second verdict in which the jury did *not* change its verdict on the two causes of action which it had expressly indicated had been affected by the erroneous instruction, and to an altered verdict on the cause of action as to which no prior inquiry had been made regarding the effect of the erroneous statute of limitations instruction. This sequence, as Judge Cote aptly observed, "exquisitely complicated" the problem created by the delay in correcting her instruction, A559, and would have made this a closer case if the language of the resubmitted instruction was drawn with less care and if the final verdict did not appear to be entirely rational in light of the evidence and the charge.

■ Because unforeseeable complications are inevitable when an erroneous instruction is not corrected until after a verdict is returned, an error in the charge should be corrected as soon as practicable after it is called to the judge's attention. Such prompt corrective action is also consistent with the language of Federal Rule of Civil Procedure 51 which, notwithstanding its purpose of avoiding unnecessary retrials, requires an objection to be made "before the jury retires to consider its verdict." These considerations suggest the rule that the procedure followed here should be reserved for the rare case where the error in the charge is noticed only belatedly and where it cannot be corrected promptly without seriously prejudicing the rights of the aggrieved party.

While all three members of the panel agree that the error in the charge here should have been corrected as soon as it was noticed, Judge Jacobs would reverse the judgment and reinstate the original verdict, because the supplemental instruction that was administered "invited the inference that the judge wanted the jury to award Bonner damages on her NYSHRL cause of action." *Infra* at 602. Because we agree that there is always a risk that the procedure followed here may lead the jury to infer that the judge is suggesting her unhappiness with the verdict, we have adopted a prophylactic rule to avoid the risk. The violation of such a rule does not, however, provide a basis for the automatic reversal of the judgment.

On the contrary, we have "come a long way from the time when all trial error was

presumed prejudicial." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 553, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984); *see also United States v. Hasting,* 461 U.S. 499, 508–10, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). The harmless error rules adopted by the Supreme Court, Fed.R.Civ.P. 61, and by Congress, 28 U.S.C. § 2111, "embody the principle that courts should exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the substantial fairness of the trial." *McDonough,* 464 U.S. at 553, 104 S.Ct. 845. This means that, "[i]f, when all is said and done, the conviction is such that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand." *Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

Particularly apposite here are our cases involving intrusive interrogation and commentary by trial judges that always carry a risk of suggesting that the judge favors one side over the other. In criminal cases, where our willingness to accept the risk of prejudice is presumably less than in civil cases, we have held that "this Court's role is 'not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial.'" *United States v. Rosa,* 11 F.3d 315, 343 (2d Cir.1993) (alteration in original) (quoting *United States v. Pisani,* 773 F.2d 397, 402 (2d Cir.1985)). Only recently, we suggested that we will upset a judgment in a civil case "on the basis of a judge's improper remarks if the judge expresses [his] opinion on an ultimate issue of fact in front of the jury or [argues] for one of the parties." *Shah v. Pan Am. World Servs., Inc.,* 148 F.3d 84, 98 (2d Cir.1998) (quoting *Causey v. Zinke (In re Aircrash in Bali, Indonesia),* 871 F.2d 812, 815 (9th Cir.1989) (alteration in original)).

The error in this case does not come close to approaching this standard. Judge Jacobs acknowledges that "[t]he trial record discloses no agenda on the part of the district judge other than to elicit the true verdict of the jury under a sound statement of the law, without influence or manipulation by the court," *infra* at 602, and we have already set forth in detail the considerations that persuade us that the risk of prejudice in this case is sufficiently insignificant as to render the error harmless. Indeed, when asked at oral argument what prejudice the defendants had suffered by post-verdict resubmission of the issue of liability, defendants' counsel asserted only that they were prejudiced because they were deprived of the right to a judgment on the first verdict returned by the jury. This is a separate argument that we have already considered and rejected on its merits. On the assumption that the defendants did not have a vested right to the entry of a judgment based on the answers to the first verdict sheet, we decline to presume that the delay in recharging the jury was prejudicial.

Moreover, we also take issue with the remedy Judge Jacobs would afford the defendants. While we would characterize it as an abuse of discretion, we need not quarrel here with Judge Jacobs's suggestion that, once the court allowed the jury to render its verdict under the erroneous charge, "the court lacked discretion at that point to direct further deliberations guided by an amended charge." *Infra* at 601. Nevertheless, it is hardly clear that reinstatement of the original verdict is the appropriate remedy. In *Finnegan v. Fountain,* 915 F.2d 817, 820–21 (2d Cir. 1990), we rejected the argument "that even if the first and second [special] verdicts are inconsistent, we may not properly take into account anything the jury found in the second verdict, because it was error for the district court to have even submitted it to the jury [after the initial verdict was returned]." Instead, we held that "[w]hether or not it was error for the

district court to have submitted the second verdict, we cannot give effect to one jury finding directly contradicted by another the very next day." *Id.* at 821. Under these circumstances, "[e]ven if the district court should not have allowed the jury to make the latter finding," the entry of a judgment based on the initial special verdict was unwarranted. *Id.* Instead, we ordered a new trial. The defendants here do not seek a retrial. Because the delay in correcting the instruction was harmless, it is unnecessary for us to decide whether it would accord with justice or reason to order the entry of judgment based on a verdict that resulted from an erroneous legal instruction.

## II. ATTORNEY'S FEES

 Title VII provides that, "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee ... as part of costs." 42 U.S.C. § 2000e–5(k). The district judge found that plaintiff was a "prevailing party" within the meaning of the foregoing section, and awarded her fees and costs totaling $760,109.92. Plaintiff was entitled to an award of attorney's fees and costs on the Equal Pay Act claim on which the jury returned an award of $10,000. Nevertheless, it is undisputed that a very substantial part of the award of attorney's fees covered the cost of litigating the hostile work environment sexual harassment cause of action. We agree with defendants that plaintiff was not entitled to attorney's fees expended in obtaining a $90,000 judgment on the NYSHRL hostile work environment cause of action.

 The law is clear that, if the Title VII hostile work environment cause of action had been tried separately, and the jury returned its verdict here—a finding of liability without awarding damages—there could be no award of attorney's fees to plaintiff as a prevailing party. The applicable law in this area—the product of three separate holdings—was summed up

by Justice Thomas in *Farrar v. Hobby* as follows:

> [T]o qualify as a prevailing party, a civil rights plaintiff must ... obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit [her] at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." *Rhodes* [*v. Stewart*, 488 U.S. 1, 4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988)]. Only under these circumstances can civil rights litigation effect the material alteration of the legal relationship of the parties and thereby transform the plaintiff into a prevailing party. In short, a plaintiff "prevails" when actual relief on the merits of [her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

506 U.S. 103, 111–112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (internal quotation and additional citations omitted) (third alteration in original). As Justice Thomas emphasized in language applicable here:

> [A] judicial pronouncement that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party. Of itself, "the moral satisfaction [that] results from any favorable statement of law" cannot bestow prevailing party status. *Hewitt* [*v. Helms*, 482 U.S. 755, 762, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987)]. No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant.

506 U.S. at 112–13, 113 S.Ct. 566 (second

alteration in original).[1]

In *Farrar,* the Supreme Court held that a plaintiff, who received a nominal damage award of one dollar on his 42 U.S.C. § 1983 action, was a prevailing party entitled to attorney's fees. *Id.* at 113, 113 S.Ct. 566. Although the damage award was nominal, Justice Thomas reasoned that "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* The damage award effected a "material alteration of the legal relationship between the parties," because plaintiff could "demand payment" for the one dollar. *Id.* This was essential to a plaintiff's status as a prevailing party.

Plaintiff here failed to obtain either an enforceable judgment or settlement agreement against the defendants on her Title VII cause of action. The jury's liability finding on the Title VII cause of action entitled plaintiff to none of these—there was simply nothing to "enforce." Indeed, if a separate judgment for the Title VII claim had been entered on the jury verdict, it would have provided that plaintiff take nothing of the defendants. Nor did the jury's finding that defendants were liable for creating a hostile work environment in any other way affect a "material alteration of the legal relationship between the parties" and transform plaintiff into a prevailing party. *Id.* at 113, 113 S.Ct. 566.

On point here is *Rhodes v. Stewart,* 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988), one of the three prior cases Justice Thomas relied upon in *Farrar.*[2] In *Rhodes,* two plaintiffs obtained a declaratory judgment that prison officials had violated their First Amendment rights. Prior to the entry of judgment, "one of the plaintiffs had died and the other was no longer in custody." *Id.* at 2, 109 S.Ct. 202. The Supreme Court held that neither plaintiff was a prevailing party, because the entry of a declaratory judgment does not render a plaintiff a prevailing party unless it " 'affects the behavior of the defendant towards the plaintiff.' " *Id.* at 4, 109 S.Ct. 202 (quoting *Hewitt,* 482 U.S. at 761, 107 S.Ct. 2672). Whatever "modification of prison policies" the declaratory judgment might have effected "could not in any way have benefited either plaintiff, one of whom was dead and the other released." *Id.* at 4, 109 S.Ct. 202.

The jury's finding here of sexual harassment on the Title VII cause of action is of no more legal consequence than a declaratory judgment to that effect. Plaintiff was no longer employed by the defendants, and any change in defendants' practices resulting from the verdict will not affect the relationship between them. Under these circumstances, as the Court of Appeals for the Eleventh Circuit observed of a plaintiff who obtained a finding of sex discrimination without an award of damages, "Walker did not attain even a declaratory judgment as did the plaintiffs in *Rhodes.* Instead, Walker's only claim to the spoils of victory is a jury finding of sexual harassment. That is not the stuff of which legal victories are made.' " *Walker v. Anderson Elec. Connectors,* 944 F.2d 841, 847 (11th Cir.1991) (quoting *Hewitt,* 482 U.S. at 760, 107 S.Ct. 2672).

---

1. A plaintiff may also be a prevailing party where the lawsuit is a "catalyst" that prompts a defendant to halt the practices challenged in the complaint before the entry of a final judgment. *See Marbley v. Bane,* 57 F.3d 224, 234 (2d Cir.1995) (Jacobs, J.); *St. Louis Fire Fighters Ass'n v. City of St. Louis,* 96 F.3d 323, 330–31 (8th Cir.1996) (Magill, J.). This holding is consistent with legislative history of the Civil Rights Attorney's Fees Awards Act of 1976, H.R.Rep. No. 94–1558 at 7 (1976) ("[A]fter a complaint is filed, a defendant might voluntarily cease the unlawful practice. A court should still award counsel fees even though it might conclude, as a matter of equity, that no formal relief such as an injunction is needed.").

2. The other two were *Hewitt* and *Texas State Teachers Ass'n v. Garland School Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

While plaintiff was the prevailing party on her NYSHRL cause of action for sexual harassment, New York law does not provide for attorney's fees, and it is conceded that plaintiff would not have been entitled to an award of attorney's fees if the NYSHRL cause of action had been tried separately. Indeed, we so held expressly in *Lightfoot v. Union Corp.*, 110 F.3d 898 (2d Cir.1997). There the plaintiff joined an untimely age discrimination claim under the Age Discrimination in Employment Act (ADEA) with a state-law analog under the NYSHRL. The only claim that survived summary judgment and went to trial was the state-law claim under the NYSHRL on which Lightfoot obtained a judgment of $75,000. Notwithstanding the judgment he obtained on the NYSHRL cause of action, we held that Lightfoot was not entitled to an award of attorney's fees as a prevailing party. In so doing, we rejected "a 'substantiality test' under which a plaintiff is entitled to attorney's fees when he prevails on a state-law claim arising out of a common nucleus of operative fact with a federal claim pursuant to which attorney's fees would be available." *Id.* at 914.

*Lightfoot* made clear that an award of attorney's fees in such circumstances was appropriate only where a plaintiff prevailed on a statutory claim pendent to a substantial unresolved *constitutional* claim. The prudential reason for such an exception, which finds support in the legislative history of 42 U.S.C. § 1988, *see Maher v. Gagne*, 448 U.S. 122, 132 n. 15, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), is that it permits a court to avoid the resolution of a complex constitutional claim that it would otherwise be forced to resolve for no reason other than to determine plaintiff's entitlement to counsel fees. A fee award in a case in which a plaintiff prevails only on a state law cause of action, because the court chose to avoid the resolution of the related constitutional claim, " 'furthers the Congressional goal of encouraging suits to vindicate constitutional rights without undermining the longstanding ju-

dicial policy of avoiding unnecessary constitutional decisions.' " *Lightfoot,* 110 F.3d at 914 (quoting language originally found in *Gagne v. Maher*, 594 F.2d 336, 342 (2d Cir.1979), *aff'd, Maher v. Gagne,* 448 U.S. 122, 132, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)). *Lightfoot,* however, held that this prudential policy applied only "to plaintiffs who prevail on a statutory claim pendent to a substantial constitutional claim," and that it is "not implicated where the asserted basis for a fee award is merely a federal statute such as the ADEA." 110 F.3d at 914. Nor could it possibly be implicated in a case in which the federal claim—whether constitutional or statutory—has been actually decided. *See McDonald v. Doe,* 748 F.2d 1055, 1057 (5th Cir.1984); *Reel v. Arkansas Dep't of Correction,* 672 F.2d 693, 697 (8th Cir.1982). Under these circumstances, "we s[aw] no reason to reward those plaintiffs who supplement their valid claims under the NYSHRL with meritless claims under the ADEA by allowing them to circumvent the state-law rule that attorney's fees are not available under the NYSHRL." *Lightfoot,* 110 F.3d at 914.

This case is a mirror image of *Lightfoot.* Indeed, the pretrial dismissal of the ADEA cause of action in that case was in part based on the statute of limitations. Plaintiff's claim here derives solely from the fact that, unlike *Lightfoot,* the federal and state causes of action were tried together. Her argument that these fortuitous circumstances entitle her to prevailing party status is akin to the equation of $0 + 0 = 1$. If adopted, it would undermine the policy judgments of two sovereigns. In addition to "circumvent[ing] the [New York] state-law rule that attorney's fees are not available under the NYSHRL," *Lightfoot,* 110 F.3d at 914, it would award plaintiff hundreds of thousands of dollars on a time-barred Title VII claim, thus nullifying the "value judgment [made by Congress] concerning the point at which the interests in favor of protecting valid claims are outweighed by the interest in prohibiting the prosecution of stale ones." *Johnson v.*

*Railway Express Agency, Inc.,* 421 U.S. 454, 463–64, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). *See also Delaware State College v. Ricks,* 449 U.S. 250, 257–58, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); Robert A. Leflar, *The New Conflicts–Limitations Act,* 35 Mercer L.Rev. 461, 469 (1984). Supreme Court and Second Circuit precedent compel the rejection of plaintiff's claim.

*National Private Truck Council v. Oklahoma Tax Commission,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995), is directly on point. The plaintiffs there challenged certain Oklahoma taxes as violating the "dormant" Commerce Clause which restricts the power of states to interfere with interstate commerce. They sought relief pursuant to 42 U.S.C. § 1983 and Okla. Stat. Tit. 68, § 226 (1981). The latter Oklahoma law created a right of action "to afford a remedy to a taxpayer aggrieved by the provisions" of any state tax law "where the taxes complained of are 1) an unlawful burden on interstate commerce, 2) violative of Acts of Congress or the United States Constitution, or 3) in cases where jurisdiction is vested in any courts of the United States." *Private Truck Council of Am. v. Oklahoma Tax Comm'n,* 806 P.2d 598, 607 (Okl.1990), *vacated* 501 U.S. 1247, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991) (internal quotation omitted).

Ultimately, following a protracted procedural history that we skip over, the Supreme Court of Oklahoma held that the plaintiffs were entitled to prevail because the taxes constituted an unlawful burden on interstate commerce. While it granted a refund of taxes pursuant to Oklahoma law, it declined to grant relief under 42 U.S.C. § 1983 even though one of the "rights privileges or immunities" protected by § 1983 was the right to be free from state action that violates the dormant Commerce Clause. *Dennis v. Higgins,* 498 U.S. 439, 446–47, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). The reason for the denial of relief pursuant to § 1983 need not detain us here. The significance of this denial is that it compelled the related holding that the plaintiffs were not entitled to attorney's fees pursuant to 42 U.S.C. § 1988.

The Supreme Court affirmed the denial of relief pursuant to 42 U.S.C. § 1983, after concluding that "Congress never authorized federal courts to entertain damages actions under § 1983 against state taxes when state law furnishes an adequate legal remedy." *National Private Truck Council,* 515 U.S. at 587, 115 S.Ct. 2351. More significantly for present purposes, the Supreme Court also affirmed the denial of attorney's fees. Notwithstanding the finding that the Oklahoma tax scheme violated the Constitution, the Supreme Court held "that *when no relief can be awarded pursuant to § 1983, no attorney's fees can be awarded under 1988." Id.* at 592, 115 S.Ct. 2351 (emphasis added).

The *Oklahoma Tax Commission* case, like *Farrar v. Hobby,* involved an action pursuant to 42 U.S.C. § 1983, and its provision for an award of attorney's fees to a prevailing party, 42 U.S.C. § 1988. Nevertheless, it is settled law that the standard for recovery of attorney's fees by a prevailing party is the same under the corresponding provisions of Title VII, 42 U.S.C. § 2000e–5(k). *See Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Bridges v. Eastman Kodak Co.,* 102 F.3d 56, 58 n. 1 (2d Cir.1996), *cert. denied sub nom. Yourdon, Inc. v. Bridges,* 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997); *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183 n. 16 (2d Cir.1996); *Walker v. Anderson Elec. Connectors,* 944 F.2d 841, 846 n. 10 (11th Cir.1991). Nor can the *Oklahoma Tax Commission* case be distinguished, as plaintiff suggests, as one in which plaintiffs prevailed only on state claims and lost on their federal claims. Brief for Plaintiff–Appellee at 29. Because she was not awarded any relief on it, plaintiff here did not prevail on her Title VII claim. The finding that the jury ren-

dered in her favor on the issue of liability under Title VII was similar to the determination in the *Oklahoma Tax Commission* case that the plaintiffs were deprived of their right under the Commerce Clause to be free of the challenged state taxes. Indeed, in the latter case the plaintiffs would have been entitled to relief under § 1983 if there had not been an adequate state remedy. Here, on the contrary, plaintiff was not entitled to relief under Title VII because her claim was time-barred. If anything, plaintiff here has a far less compelling claim to status as a prevailing party on her federal claim than the plaintiffs in the Oklahoma case.

Our own holding in *Russo v. State of New York*, 672 F.2d 1014 (2d Cir.1982), *modified on other grounds*, 721 F.2d 410 (2d Cir.1983), is equally on point. The complaint there contained a cause of action pursuant to 42 U.S.C. § 1983 and a common law cause of action for malicious prosecution (among others) arising out of the alleged illegal arrest of the plaintiff. The jury awarded the plaintiff a total of $30,000 in compensatory and punitive damages on the malicious prosecution claim, although it found against the plaintiff on his civil rights claim under 42 U.S.C. § 1983. The plaintiff was awarded attorney's fees pursuant to 42 U.S.C. § 1988 notwithstanding the jury verdict in favor of the defendant on that cause of action.

The district court judge in *Russo*— Judge Sofaer—recognized that, "[a]s a general proposition, a rule precluding attorney's fees when the plaintiff has specifically lost on the civil rights claim asserted seems proper." *Meriwether v. Sherwood*, 514 F.Supp. 433, 436 (S.D.N.Y.1981) (a related case addressing the award of attorney's fees in *Russo*). Nevertheless, Judge Sofaer held that, in exceptional circumstances, a district court judge had the discretion to award attorney's fees to a plaintiff who prevails on a "closely related" pendent claim that "substantially vindicates his constitutional quest." *Id.* Such circumstances were present in *Russo* be-

cause the causes of action were so inextricably intertwined that "the jury could have found for plaintiff on the civil rights claim almost entirely on the basis of its determination as to malicious prosecution under state law." *Id.* Even if a finding for plaintiff on a claim of malicious prosecution was in itself an insufficient predicate to authorize a finding that a plaintiff has prevailed on his § 1983 cause of action, attorney's fees were still warranted. Judge Sofaer explained why in the thoughtful language which follows.

> [A] finding that plaintiff is the prevailing party is warranted because, in addition to the presence of an adequate factual predicate for such a finding, the litigation vindicated the plaintiff's constitutional quest. The defendant was found liable under state law precisely for the kind of activity that may create liability under section 1983. Plaintiff was awarded significant damages, both compensatory and punitive, and succeeded, to a significant extent, in clearing his name in the community in which he lives and needs to secure employment. To the extent that his claim of harassment was true, moreover, he may have succeeded in deterring such conduct whether aimed at himself or at other members of his community.

*Id.*

We reversed. Echoing the Supreme Court's admonition that "courts must guard against awarding attorney's fees where Congress has not authorized [them]," we rejected the "novel theory" on which plaintiff was awarded damages. *Russo v. State of New York*, 672 F.2d at 1023. As Judge Meskill explained:

> In section 1988 Congress has provided that a prevailing party in a section 1983 action can recover attorney's fees, however, it has not provided that a prevailing party in a malicious prosecution can do so. In the absence of legislative intent and pronouncement, it was not within the province of the trial court to fashion an award of attorney's fees in

this case. A court cannot appropriate a function which Congress has reserved for itself.

*Id.*

*Milwe v. Cavuoto,* 653 F.2d 80 (2d Cir. 1981), upon which the plaintiff relies, does not compel a contrary result. The plaintiff there obtained an award of nominal damages on her § 1983 cause of action and a more substantial award of compensatory damages on a pendent state law cause of action. We held that the district court erred in declining to award counsel fees. The plaintiff was eligible for an award because (1) the plaintiff was a prevailing party on her § 1983 cause of action and (2) attorney's fees are available "in cases 'in which the plaintiff prevails on a wholly statutory, non-civil rights claim pendent to a substantial constitutional claim.'" *Id.* at 84 (quoting *Maher v. Gagne,* 448 U.S. 122, 132, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)). We subsequently held that "the underlying rationale of [the latter ground in] *Milwe* was based largely on the policy concern of avoiding unnecessary constitutional decisions—a policy not implicated where the asserted basis for the fee award is merely a federal statute such as the ADEA." *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 914 (2d Cir.1997). Neither predicate for the holding in *Milwe* is applicable here for the reasons which we have already discussed in detail.[3]

Nor is *Bridges v. Eastman Kodak, Co.,* 102 F.3d 56, 58 (2d Cir.1996), *cert. denied sub nom. Yourdon, Inc. v. Bridges,* 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997), upon which the district court and plaintiff rely, controlling here. In *Bridges,* we affirmed an award of attorney's fees to a plaintiff who had received a damage award only on her pendent state law sexual harassment claims, but not on her Title VII claim. The jury had awarded plaintiff $11,214.64 in back pay and $20,000 in compensatory damages under state law, but had subtracted the entire back pay award due to plaintiff's failure to mitigate. *Id.* at 57. The district court judge, hearing the Title VII claim without the jury, found that the federal and state claims "involve[d] a common core of facts and similar legal theories," and held that Title VII was violated, but did not award plaintiff back pay because of the jury's mitigation finding. *Bridges v. Eastman Kodak Co.,* No. 91 Civ. 7985, 1996 WL 47304 at * 2 (S.D.N.Y. Feb. 6, 1996). Because the district court judge "lack[ed] the power to ... award" compensatory damages under Title VII, *id.,* Bridges was left with a judgment of $20,000 on her NYSHRL cause of action and a finding of liability without an award of damages on her Title VII cause of action.

We affirmed the district court's award of attorney's fees on the theory that Bridges was a prevailing party, because (1) her Title VII claim was heard and resolved in her favor, and (2) she won a substantial monetary award under her related state-law claim. She thus "'materially altered the legal relationship between the parties,'" and thereby "achieved some of the benefit she sought in bringing suit." 102 F.3d at 59 (quoting *Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (brackets omitted)). The premise underlying this holding is remarkably similar to that expressly articu-

---

**3.** Cases in other circuits on which plaintiff relies for an award of counsel fees based on her success on the pendent state law claim either implicate the policy concern of avoiding unnecessary constitutional decisions, *see e.g. Williams v. Thomas,* 692 F.2d 1032, 1036 (5th Cir.1982); *Lund v. Affleck,* 587 F.2d 75, 76–77 (1st Cir.1978), involve situations in which plaintiff recovered damages on a related federal cause of action, *see e.g. Aubin v. Fudala,* 782 F.2d 287, 290–91 (1st Cir.1996);

*National Org. for Women v. Operation Rescue,* 37 F.3d 646, 653 (D.C.Cir.1994) (dictum), or contain unusual circumstances not present here, *see e.g., Hall v. Western Prod. Co.,* 988 F.2d 1050, 1055–56 (10th Cir.1993) (where erroneous instructions led jury to believe that it could not award damages on both the ADEA and state law breach of contract claims and jury awarded damages on the latter claim after finding liability on both).

lated by the district court judge and rejected by us in *Russo:* the Title VII and the NYSHRL causes of action involved precisely the same conduct, and the damages, although awarded on the pendent state law cause of action, resulted in the vindication of federal rights. The language from *Farrar,* which *Bridges* quoted out of context, simply provided a different way of saying the same thing.

We recognize the effort *Bridges* made to distinguish itself from *Russo* on the ground that Russo "lost on his federal civil rights claim," whereas "Bridges' federal civil rights claim was heard and it was decided in her favor." *Id.* at 59. While the present case would appear to fall on the *Bridges* side of this tenuous distinction, the form of the verdict here is particularly inconsequential because it is common ground that the jury found that the Title VII claim for damages (the only relief sought) was time-barred. If the jury had returned a special verdict containing such an express finding, the defendants would have been entitled to the entry of a judgment in their favor. There is no rational reason why a different result should follow because of the form of the verdict.

This is not the only reason why *Bridges* should not dictate the outcome here. Unlike *Bridges,* the state-law claim for which plaintiff won $90,000 in compensatory damages did *not* arise from the same events that gave rise to her Title VII claim. The jury necessarily found that plaintiff was not entitled to damages for any of defendants' conduct that took place within the 300-day limitations period prior to the filing of her complaint. The only explanation for the difference between the first jury verdict (awarding plaintiff a finding of liability but no damages on her claims under both Title VII and the NYSHRL) and the second verdict (awarding her $90,000 in compensatory damages under the NYSHRL) is that the jury found that plaintiff was entitled to damages as a result of the defendants' conduct *during the longer NYSHRL limitations period.*

The events giving rise to the NYSHRL award, then, are *not* the same as those giving rise to the Title VII claim (although they may be the same or similar in kind and characterization). Since it is the damage award on the NYSHRL cause of action that "materially alter[s] the legal relationship between the parties" and thereby affords plaintiff "some of the benefit she sought in bringing suit," *Bridges,* 102 F.3d at 59 (quoting *Farrar,* 506 U.S. at 111–12, 113 S.Ct. 566 (brackets omitted)), the fact that the damage award covers events that are different from the Title VII claim makes it impossible to meld it with the "favorable" verdict on the Title VII claim and declare plaintiff a prevailing party on that claim.

Moreover, it is also of significant consequence that the award of damages here covered events for which recovery was precluded by the statute of limitations. In *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the Supreme Court held that:

[a] discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

Under this analysis, the events for which plaintiff was awarded $90,000 under the NYSHRL must be treated as if they occurred during a period in which Title VII was not in force. Viewed in this way, there is simply no justification for a conclusion that the jury verdict on the NYSHRL cause of action vindicated plaintiff's rights under Title VII.

Similar considerations render inapposite those cases which permit a plaintiff who prevails on her federal cause of action to avoid a deduction for time expended by her attorney in pursuing unsuccessful state

causes of action that involve "related legal theories applied to a common core of facts." *Phetosomphone v. Allison Reed Group, Inc.,* 984 F.2d 4, 7 (1st Cir.1993) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434–35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The reason for this rule is that, when "the federal and state claims are so interrelated, and the time spent in preparation of those claims [is] so overlapping ... an[y] attempt to separate the time attributable to one or the other would be futile." *Id. See, e.g., LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 762–63 (2d Cir. 1998). Because there is no such overlap here, there is no reason why the district court cannot with ease separate the time expended in proving the state-law cause of action from the time expended in proving the Title VII claim. *See Phetosomphone,* 984 F.2d at 7 (holding that "the district court is [not] prevented from eliminating hours attributable to state-law claims where, as here, the court reasonably concludes that there is not a complete overlap and separation is proper"). Indeed, in *LeBlanc–Sternberg,* we directed the district court judge to make such an adjustment on remand where "one or more [unsuccessful] claims ... were not so related to the[ ] successful claims." 143 F.3d at 763.

A remand here would not be warranted, even if plaintiff is deemed to be a prevailing party on the Title VII cause of action, because it would be an abuse of discretion to award attorney's fees on that claim. *See id* at 758 ("A plaintiff who has 'prevail[ed]' in the litigation has established only his eligibility for, not his entitlement to, an award of fees.") (alteration in original). The cases in which a plaintiff has obtained nominal damages are particularly apposite here. While an award of such nominal damages is sufficient to make plaintiff a prevailing party, "*Farrar [v. Hobby]* indicates that the award of counsel fees [in such a case] will be rare." *Pino v. Locascio,* 101 F.3d 235, 238 (2d Cir.1996). Indeed, it is "likely to be zero ... unless the case established an important precedent, decreed declaratory or injunctive re-lief, or otherwise conferred substantial benefits not measured by the amount of damages awarded." *Hyde v. Small,* 123 F.3d 583, 584 (7th Cir.1997), (Posner, *C.J.*). Plaintiff here did not even obtain an award of nominal damages on her Title VII cause of action. Because the damages award she obtained on the pendent state law cause of action was for conduct that occurred outside of the Title VII statute of limitations, and because there are no special circumstances here, *see e.g., Hall v. Western Prod. Co.,* 988 F.2d 1050, 1055–56 (10th Cir.1993) (where erroneous instructions led jury to believe that it could not award damages on both the ADEA and state law breach of contract claims and jury awarded damages on the latter claim after finding liability on both), plaintiff would not be entitled to an award of attorney's fees even if she was otherwise eligible for it. On the contrary, this case is remarkably similar to *Bristow v. Drake Street, Inc.,* 41 F.3d 345 (7th Cir.1994) where the plaintiff prevailed on a breach of contract action closely related to her wrongful termination claim under Title VII. Chief Judge Posner there wrote that the plaintiff "cannot obtain attorney's fees for breach of contract, and it is exceedingly unlikely that she can obtain attorney's fees if the only relief to which she is entitled under Title VII is nominal damages." *Id.* at 352.

While we hold that plaintiff was not a prevailing party on her Title VII cause of action, we remand for further proceedings because the jury awarded plaintiff $10,000 in back pay under the Equal Pay Act, 29 U.S.C. § 206(d). This judgment entitled plaintiff to attorney's fees pursuant to 29 U.S.C. § 216(b). Judge Cote observed in the opening paragraph of her opinion that plaintiff's motion for attorney's fees was made under both Title VII and the EPA, *Bonner II* at *1, but her only subsequent discussion of the EPA fee statute was the observation that, "[u]nder the EPA, a prevailing plaintiff is entitled to attorney's fees ... [and t]here is no dispute that the plaintiff was the prevailing party on her

claim under the Equal Pay Act." *Id.* at *4. She did not separately allocate the EPA and Title VII award of attorney's fees. Accordingly, a remand is necessary to adjust the award of attorney's fees to reflect only plaintiff's success on her EPA cause of action.

## CONCLUSION

The judgment of the district court entered on the jury verdict is affirmed. The judgment awarding attorney's fees and costs is vacated and the case is remanded for further proceedings consistent with this opinion. We have considered the defendants' remaining arguments addressed to both of the judgments and we find them to be either without merit or moot.

JACOBS, Circuit Judge, dissenting in part and concurring in part:

I respectfully dissent from the majority opinion insofar as it concludes that the supplemental jury charge was properly given in this case. I agree with the majority opinion that such post-verdict instructions should not be given except in "the rare case where [a potentially outcome-determinative] error in the charge is noticed only belatedly and where it cannot be corrected promptly without seriously prejudicing the rights of the aggrieved party." *Supra* at 591. But this is not that "rare case":

> (i) Bonner's counsel advised the trial court of the error *before* the jury started deliberating, so the error in the charge was *not* noticed belatedly; and

> (ii) the error *could* have been corrected without prejudice to the party aggrieved by the error in the original charge—plaintiff Bonner—because expansion of the period for which she was entitled to recover damages under Title VII could only have benefited her.

I therefore endorse the majority's analysis, but I cannot agree that that analysis justifies the result on appeal.

The majority accounts for the disconnect between rule and result by characterizing the rule as "prophylactic" only. I respectfully disagree. The rule is a rule—not precatory words. And it is a good rule that should be applied because its prophylactic effect depends on its application.

The original jury charge erroneously applied Title VII's 300-day statute of limitations to Bonner's New York State Human Rights Law ("NYSHRL") claim, which has a three-year statute of limitations. *Compare* 42 U.S.C. § 2000e–5(e)(1) (1994) *with Koerner v. State,* 62 N.Y.2d 442, 447, 478 N.Y.S.2d 584, 586, 467 N.E.2d 232 (1984). Before the jurors retired, Bonner's counsel advised the district court of this legal error—one that under the facts of this case had an evident and significant impact on liability as well as damages. The district court sought input of counsel as to what to do, and Bonner's counsel—whose case was placed in jeopardy by reason of the omission—nevertheless told the court *that she did not want the error corrected.* By withdrawing her objection before the jury retired, Bonner waived her right to object to the charge. *See United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (internal quotation marks omitted); *Lavoie v. Pacific Press & Shear Co.,* 975 F.2d 48, 55 (2d Cir.1992) ("Failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection."). The district court then had discretion to correct the error *sua sponte* or to allow the jury to deliberate under the influence of the error. But once the court received an internally consistent verdict that conformed to the erroneous charge, the court lacked discretion at that point to direct further deliberations guided by an amended charge.

Post-verdict supplementation of the charge has a natural and irreducible ten-

dency to warn the jury that something has misfired, and to suggest that some change in result is either necessary or, from the judge's point of view, desired. *See Perricone v. Kansas City S. Ry.*, 704 F.2d 1376, 1378 (5th Cir.1983) ("There is a substantial risk that such a supplemental instruction given immediately to the jury on its return is coercive."). Some post-verdict supplementation is of course permissible and necessary. Thus when a jury's answers to interrogatories are found to be internally inconsistent or contradictory, the trial court has discretion to announce the same instructions to the jury—or to announce additional ones that restate or clarify the trial court's initial charge—in order to elicit a verdict that is internally consistent and that conforms to the initial charge. *See Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1259–61 (5th Cir.1988); *Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1179 (5th Cir.1987) ("[M]ere resubmission [of the charge] does not necessarily 'coerce' a verdict."); *see also Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 26–28 (2d Cir.1986); *Litton Sys., Inc. v. AT & T*, 700 F.2d 785, 803 (2d Cir.1983).

Here, however, the jury's initial verdict was internally consistent and fully compatible with the district court's initial charge. And the district court's supplemental charge was no mere clarification or restatement of the earlier instructions; it was a new charge that expanded the timeframe for which the jury could award damages in a time-sensitive case. Since the jury had just returned special verdict answers finding the defendants "liable" for sexual harassment but awarding zero damages—a verdict which decisively resolved Bonner's claims in the defendants' favor—this new charge invited the inference that the judge wanted the jury to award Bonner damages on the NYSHRL cause of action. *See McCollum v. Stahl*, 579 F.2d 869, 871 (4th Cir.1978) (where jury's initial verdict was dispositive of claim, trial court's resubmission of special verdict questions to jury "was tantamount" to impermissible direction that jury find liability, which it had not previously done, to warrant jury's damages award).

The trial record discloses no agenda on the part of the district judge other than to elicit the true verdict of the jury under a sound statement of the law, without influence or manipulation by the court. The majority's analysis turns in large part on this evident lack of bias. Such an analysis is unworkable, however. We are not in a good position to gauge judicial bias in a close case, and there would be an institutional reluctance to make such a finding. For these reasons, the abuse of discretion inquiry should focus on what was done (which will be of record) rather than on the judge's *intentions* (which are not always evident and are usually presumed to be pure). Here, the timing and manner of the district court's corrective measures in effect invited the jury to award damages for Bonner's NYSHRL claim. It is a dangerous proposition to allow an exercise of discretion in which a court can await a jury's verdict before correcting the jury charge to reflect a proposition of law that the court fully appreciated prior to the moment the jury retired.

I therefore conclude that we should deem the district court's supplemental charge to be an abuse of discretion and reinstate the jury's initial verdict. No retrial is needed, because Bonner waived her right to object to the initial charge and because the jury's first verdict conformed to that charge. In the end, the district judge's methodical handling of this delicate situation assured that this Court would have before it all of the facts necessary to direct entry of judgment, and that no retrial would be entailed regardless of how we ruled on the substance and timing of statute of limitations charge.

As to the issue of attorney's fees, I concur in the result reached by the majority opinion because Bonner would not be entitled to attorney's fees under 42 U.S.C. § 2000e–5(k) after reinstatement of the

jury's initial verdict. *See Farrar v. Hobby*, 506 U.S. 103, 111–13, 113 S.Ct. 566, 572–74, 121 L.Ed.2d 494 (1992).

The majority opinion considers and discusses a number of precedents that bear upon the availability of attorney's fees under Title VII in various circumstances in which the only recovery is won under a state statutory analog. In my view, this case does not compel us to fit all these cases into a doctrinal framework. The holding of the majority opinion is that "[b]ecause the damages award [Bonner] obtained on the pendent state law cause of action was for conduct that occurred outside the Title VII statute of limitations, and because there are no special circumstances here, [Bonner] would not be entitled to an award of attorney's fees even if she was otherwise eligible for it" because she brought a Title VII claim. *Supra* at 600–01. That is the holding because it is the only articulated ground that narrowly fits the circumstances of this case and because it is entirely sufficient to decide it. I therefore concur in that analysis as well as in the result to which it leads.